KENNA LLOYD GANDEE, Appellant, *v.* LISA RENEE GANDEE, Respondent.

No. 26209

GAYLE J. MONTELIONE nka GAYLE J. MATLOCK, Appellant, *v.* DONALD F. MONTELIONE, Respondent.

No. 26241

May 25, 1995                                      895 P.2d 1285

*Skelly & Sheehan,* Reno, for Appellant Kenna Lloyd Gandee.

*Douglas W. Nicholson,* Reno, for Respondent Lisa Renee Gandee.

*David H.T. Wayment,* Reno, for Appellant Gayle J. Montelione.

*Skelly & Sheehan,* Reno, for Respondent Donald F. Montelione.

# OPINION[1]

*Per Curiam:*

In these cases, we once again construe NRS 125A.350, which requires a custodial parent to obtain permission from the noncustodial parent or the district court to move his or her children out of the state.

## GANDEE v. GANDEE, DOCKET NO. 26209

Appellant Kenna Lloyd Gandee (Kenna) and respondent Lisa Renee Osgood, formerly Lisa Gandee (Lisa), were divorced on May 4, 1992. Kenna and Lisa have two daughters. Kenna wants to move himself and the two girls, Brianna and Kelsey, to Medford, Oregon, so that he can accept a promotion from his position as a sales associate at Montgomery Ward & Co.'s Reno store to general manager of Montgomery Ward & Co.'s Medford store. Kelsey is now four years old and in pre-school. Brianna is currently five years old and attends a special education pre-school. Brianna was born with physical disabilities caused during the first trimester of Lisa's pregnancy. Brianna's skull failed to form properly, she has a "webbed" neck and the palate of her mouth is caved in with her jaw bones a little off center. Medical tests reveal that Brianna has speech and motor skill problems.

Lisa denied Kenna permission to move the children to Medford. After Lisa denied Kenna permission to move the children, Kenna filed a motion in the district court seeking judicial permission to move pursuant to NRS 125A.350.[2] After a hearing on Kenna's motion, the district court denied the motion on the grounds that: (1) the only actual advantage presented by the move was "a few thousand dollars that will be eaten up on forfeited child support or transportation costs," and (2) the children would

---

[1]These two cases have been consolidated for the purposes of disposition only.

[2]NRS 125A.350 provides:

> If custody has been established and the custodial parent or a parent having joint custody intends to move his [or her] residence to a place outside of this state and to take the child with him [or her], he [or she] must, as soon as possible and before the planned move, attempt to obtain the written consent of the other parent to move the child from the state. If the noncustodial parent or other parent having joint custody refuses to give that consent, the parent planning the move shall, before he [or she] leaves the state with the child, petition the court for permission to move the child. The failure of a parent to comply with the provisions of this section may be considered as a factor if a change of custody is requested by the noncustodial parent or other parent having joint custody.

not be able to see their mother on a weekly basis as they have been doing.

This court has construed NRS 125A.350 in three recent cases: Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995), Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994), and Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). This line of cases establishes that the custodial parent wishing to remove the child from the state must make a threshold showing of "a sensible, good faith reason for the move." *Trent*, 111 Nev. at 315-16, 890 P.2d at 1313. "A 'good faith' reason means one that is not designed to frustrate the visitation rights of the noncustodial parent." *Jones*, 110 Nev. at 1261, 885 P.2d at 569 (1994). In this case, Kenna made the threshold showing of a sensible, good faith reason for the move, *i.e.*, career advancement.

If, as in this case, the custodial parent meets this threshold requirement, the district court is then bound to consider other factors, as enumerated in *Schwartz*. These factors are:

> (1) the extent to which the move is likely to improve the quality of life for both the children and the custodial parent; (2) whether the custodial parent's motives are honorable, and not designed to frustrate or defeat visitation rights accorded to the noncustodial parent; (3) whether, if permission to remove is granted, the custodial parent will comply with any substitute visitation orders issued by the court; (4) whether the noncustodian's motives are honorable in resisting the motion for permission to move; and (5) whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent.

*Schwartz*, 107 Nev. at 383, 812 P.2d at 1271. In particular, a district court should focus "on the availability of adequate, alternate visitation." *Trent*, 111 Nev. at 315-16, 890 P.2d at 1313.

With respect to the first factor, Kenna provided undisputed evidence that he had a greater familial support system in Medford, and that his and the children's housing situation would improve. Further, Kenna's improved financial situation and expanded career opportunities will impact the children's quality of life. He will be able to save money for the girls' college education and better provide for Brianna's special needs. Kenna

also testified that he had inquired into the quality of education available to his children in Medford, and in particular the quality of special education programs for Brianna. He found that the quality of education was comparable to that available in Reno. Kenna's testimony was not contradicted.

With respect to the second *Schwartz* factor, the district court specifically found, and Lisa's counsel conceded, that Kenna's motives for seeking to move the children to Medford were honorable.

With respect to the third *Schwartz* factor, Lisa did not dispute that Kenna has always been accommodating regarding visitation. Kenna himself proposed that Lisa get blocks of time to include one-half the Christmas holiday vacation, one-half the summer vacation and rotate major holidays when the children can spend a block of at least five days at a time with Lisa. Kenna also proposed lessening Lisa's child support obligations to defray the costs of visitation. There is simply no evidence in the record that suggests that Kenna would not comply with substitute visitation orders issued by the district court.

With respect to the fourth *Schwartz* factor, whether the noncustodial parent's motives are honorable in resisting the move, the district court found that Lisa's motives for resisting the move were honorable. The record reveals that Lisa is very close to her children, and that she is concerned about the impact the move would have on her relationship with them.

With respect to the fifth *Schwartz* factor, this court has held that "[r]easonable visitation is visitation that 'will provide an adequate basis for preserving and fostering a child's relationship with the noncustodial parent if the removal is allowed.'" *Schwartz,* 107 Nev. at 385 n.5, 812 P.2d 1272 n.5 (quoting Cooper v. Cooper, 491 A.2d 607, 614 (N.J. 1984)). In *Schwartz,* this court concluded that one month per summer was adequate time to preserve the "maternal bond," and in *Jones* this court concluded that a proposed visitation schedule which would allow the noncustodial parent to have his children during regularly scheduled holidays, spring break, two weeks at the beginning of summer and two weeks at the end of summer and any three day weekend that the parent wanted was reasonable. *Jones,* 110 Nev. at 1264, 885 P.2d at 570-71. This court also took "special note" in *Jones* of the fact that Chico, the city to which the custodial parent was allowed to remove the children, is only three hours away from the noncustodial parent's home. *Id.* Under such circumstances, this court concluded, reasonable visitation should always be possible. *Id.* In this case, Medford is approximately six hours away. Although weekly visits are obviously precluded, a reasonable visitation schedule, such as the one suggested by Kenna, is certainly possible.

The district court in this case did not even consider whether there will be a realistic opportunity for Lisa to maintain a visitation schedule that will adequately foster and preserve her relationship with her children if the children move to Medford with their father. The district court merely found

> 5. That by definition if [Lisa] could only spend a block of time in the summer and on major holidays with her children, her relationship with her children changes profoundly;
>
> . . . .
>
> 10. That the children will be deprived of the chance to see their mother on a weekly basis.

The district court clearly abused its discretion by failing to even consider an alternative visitation schedule.

In light of this court's decisions in *Trent, Schwartz* and *Jones,* the district court's order must be reversed and the case remanded to the district court with instructions to grant Kenna's motion and fix a reasonable visitation schedule.

## MONTELIONE v. MONTELIONE, DOCKET NO. 26241

Appellant Gayle Matlock (Gayle) and respondent Donald Montelione (Donald) were divorced in December of 1988. They have joint legal custody of their one child, Thomas (Tommy), age 7, but Gayle has primary physical custody. Gayle wants to move with Tommy to Denver, Colorado, to live with her new husband, James Matlock (James), a geologist who has been transferred to Colorado by his employer. Gayle and James were married in January of 1994 while both were still living in Reno.

Donald, not wanting his two day a week or extended holiday visitation schedule with Tommy disrupted, refused to give Gayle permission to move as required by NRS 125A.350. Donald testified that he does not want Tommy to move because he wants to continue the great relationship that he has with his son, wants to see him every week, wants to watch him grow up and wants to teach him things like how to play baseball and how to bowl. He stated that just seeing Tommy for a few weeks in the summer was not enough and it was not the kind of relationship a boy should have with his father.

Regarding the move to Colorado, Gayle testified that the home she and James purchased in Colorado is a spacious 3,500 square foot house located in an idyllic setting in a friendly neighborhood full of children. Gayle testified that such an environment is a stark contrast to the two bedroom duplex in Reno where she and Tommy have lived for three years. James has three sons, ages 19, 16 and 12, from his prior marriage, two of whom will be living

with him and Gayle if Gayle is allowed to move to Colorado, where she would be able to be a full-time homemaker.

Gayle also testified that Tommy has experienced trouble adjusting socially, for example, his teacher put him into a special class in school on how to make friends. She felt that this situation would improve through the move to Colorado. Gayle based this on changes in personality that Tommy exhibited while visiting Colorado and spending time with James and his sons. Gayle acknowledged that Donald and Tommy love each other and stated that she has always encouraged a close relationship between them and has no desire to deny Donald visitation. She would be willing to adjust the visitation schedule and adjust child support payments so that Donald's visitation could be accommodated.

On August 24, 1994, the district court issued a decision denying Gayle's petition to move with Tommy. The district court stated:

> Tommy, a bright, loveable, somewhat socially fragile child, would do fine in Colorado. Not only that, the large beautiful home there is located in an upscale Colorado neighborhood, and would represent a step up for Tommy in terms of his physical needs and comforts. If the Court found that the mother's other allegations were true, it would have no reservations about granting her request to move and retain her primary custody rights. Her problem, however, is that she has vastly understated and distorted the nature of the boy's relationship with and attachment to his father.

The court stated that, "[Donald] is a friend, companion, and counselor to his boy two days *each* week. He does all the things a father (who is limited to two days a week) should do. . . ." The district court concluded: "[T]here *are* certain actual advantages which Tommy would realize by moving to Colorado, but they simply do not outweigh the actual advantage he receives by seeing his father each and every week." Gayle appeals this decision.

Gayle asserts that the district court applied NRS 125A.350 in an unconstitutional manner in her case because the district court placed a presumption against her moving by denying the move solely on the basis that Donald's weekly visitation would be disrupted. This type of evaluation would make it impossible for a custodial parent to move whenever there is a noncustodial parent who exercises consistent, weekly visitation. The district court's decision was contrary to its finding that she had purely honorable motives for the move and that moving would produce tangible benefits for both her and Tommy.

Disruption of weekly visitation has inappropriately been used

as the sole basis for denying a move by the custodial parent, such that the custodial parent can never move despite a showing of numerous advantages to the child. However, this court's recently issued decision in Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994), clarifies the weight to be given to the factors set out in the *Schwartz* opinion. Gayle contends, and we agree, that the court denied her motion solely on the grounds that Tommy's visitation with Donald would be disrupted if Tommy moved, thus placing an unfair burden on her and making an improper determination under the balancing test enunciated in *Schwartz*. The district court seemingly acknowledged that Gayle made the requisite showing in stating that "there *are* certain actual advantages which Tommy would realize by moving to Colorado" and that the move would represent "a step up . . . in terms of his physical needs and comforts." However, the district court then ignored its own findings by focusing solely on the loss of weekly visitation.

As discussed earlier, in *Schwartz*, this court stated that reasonable, alternative visitation is visitation that provides an adequate basis for preserving and fostering a child's relationship with the noncustodial parent. Also, we recently noted in *Jones* that the custodial parent should not have to sacrifice the advantages of a move due to a disruption of the noncustodial parent's visitation schedule given that it is the custodial parent who must arrange his or her day-to-day life in a manner consistent with the burdens of raising the child. The sad reality is that often when parents divorce, one parent may at some point lose the continuing physical contact, *i.e.*, daily time spent with his or her children, that he or she enjoyed while still married.

Based on the factors set forth in *Schwartz*, we conclude that the district court abused its discretion in denying Gayle's petition. Gayle made the necessary threshold showing of an "actual advantage" required by the first factor in *Schwartz;* namely, if she and Tommy moved to Colorado, he would have a loving, extended family and a mother who can stay at home. *Id.* at 382, 812 P.2d at 1271. The district court found that Tommy would do fine in Colorado and that the large, beautiful home he would live in there is in an upscale Colorado neighborhood and "would represent a step up for Tommy in terms of his physical needs and comforts."

Looking at the second and third *Schwartz* factors, Gayle's "motives are honorable, and not designed to frustrate or defeat visitation rights," and she will "comply with any substitute visitation orders issued by the court." *Id.* at 383, 812 P.2d at 1271. Gayle testified that she has always encouraged a close relationship between Donald and Tommy and that she would be

flexible and cooperative in working out arrangements to mitigate the effects of the move on visitation, *i.e.*, decreased child support payments to cover airfare and longer periodic visits.

In *Jones,* this court concluded that if the custodial parent shows a sensible good faith reason for the move, the district court should evaluate the other factors delineated in *Schwartz,* focusing on whether reasonable, alternative visitation is possible. It seems that the district court did not do this, as it did not make any attempt to consider an alternate visitation schedule despite its finding that Tommy would incur advantages by virtue of the move. Given Gayle's testimony that she would reduce child support payments to cover costs and work out a schedule with longer monthly visits to replace the weekly visits, reasonable, alternate visitation is possible. Gayle testified that the flight time between Denver and Reno is only one hour and forty-five minutes and that flights are readily accessible. She further stated that she would submit to any substitute visitation ordered by the court and even to full summer visits for Donald. Therefore, the district court abused its discretion in denying Gayle's petition to move.

Gayle concedes that the fourth factor under *Schwartz,* the honorableness of the other parent's motives in resisting the move, must be in favor of Donald given the district court's findings that Donald was not trying to thwart her but simply wanted to maintain a close relationship with Tommy.

Lastly, Gayle asserts that the last *Schwartz* factor, "whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship," is in her favor. Schwartz v. Schwartz, 107 Nev. 378, 383, 812 P.2d 1268, 1271 (1991). She states that while weekly visitation will be impracticable given that the parties cannot afford an airline ticket every week, there should be no reason why Tommy and Donald should not be able to visit each other regularly with less frequent, but longer visits replacing more frequent, shorter visits.

The district court apparently denied her petition based solely on the fact that Tommy would no longer be able to have this weekly physical contact with his father. However, the district court's reasoning is problematic: if the loss of weekly contact is the major factor in a court's evaluation of a custodial parent's petition to move, as long as the noncustodial parent has exercised consistent weekly visitation, this loss can always be used to keep the custodial parent in Nevada despite a showing of numerous advantages to the child that would be incurred by the move.

Given the district court's finding that the move to Colorado would be a step up for Tommy in terms of his physical needs and comforts, therefore meeting the threshold requirement of

*Schwartz,* and considering this court's decisions in *Trent, Schwartz* and *Jones,* we reverse the district court's order and remand this case to the district court with instructions to grant Gayle's motion and to fix a reasonable, alternative visitation schedule.

## CONCLUSION

In conclusion, we construe NRS 125A.350 to mean the following: once the custodial parent has made a threshold showing of a good faith reason for the move, *i.e.,* a reason that is not designed to frustrate visitation of the noncustodial parent, then the court must consider the *Schwartz* factors. Recognizing that the visitation that the noncustodial parent has been enjoying will necessarily be disrupted as a result of the custodial parent's intended move, the courts must focus particularly on the possibility of alternative and reasonable visitation schedules.

Accordingly, we reverse and remand these cases to the district court for proceedings consistent with this opinion.[3]

---

[3]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of these appeals.