OPINION
By the Court,
Shearing, J.:
On November 20, 1996, appellant Teresa McGuinness (Teresa) filed for divorce from her husband, respondent James *1432 McGuinness (James). On November 21, 1996, Teresa filed a motion requesting that the district court designate her as the primary physical custodian of the parties’ only child, Colin, and award her child support. James filed a countermotion seeking primary physical custody of Colin.
At a February 1997 hearing on these motions, the district court ordered the parties to share joint legal and physical custody of Colin with each parent having physical custody for one-half of a week pending finalization of the divorce.
In March 1997, Teresa filed a motion asking to be granted primary physical custody of Colin and for permission to relocate to West Virginia with him. In the motion to relocate, Teresa maintained that as a result of her mother’s recent death, she desired to return to her childhood home in Wheeling, West Virginia, to be close to her siblings. Teresa explained that she had inherited a substantial sum of money from her mother, as well as part ownership of her mother’s house. Her siblings agreed to permit her to live in the house, rent free, while she finished college and earned a teaching license. Teresa explained that her mother’s death not only produced closer contact with her siblings, but also renewed the importance of this contact.
In addition, Teresa explained that she had exhausted her career opportunities as a secretary in Las Vegas. She stated that teaching offers her a career, rather than a ‘ ‘job,’ ’ and because her hours would mirror Colin’s school schedule, he would no longer need outside day care.
James opposed her motion, arguing that a move to West Virginia offers no actual advantage to Teresa or Colin and that the move would disturb the current, functioning joint custody arrangement. The district court held an evidentiary hearing to address the divorce, a permanent custody arrangement, and Teresa’s motion to relocate. During the hearing, the district court heard extensive testimony of Teresa and James regarding their parenting strengths, weaknesses, abilities, and patterns. Their testimony indicated that both Teresa and James were caring, responsible parents, each with only minor complaints about the parenting style of the other. The hearing also revealed that the temporary joint custody arrangement, in place since February 19, 1997, was operating without significant problems.
On June 24, 1997, the district court issued findings of fact and conclusions of law and granted a decree of divorce. The district court found that although Teresa filed her request to relocate in good faith, an award of joint legal and physical custody better served Colin’s best interests. The district court held that Teresa’s motion must be denied because a joint physical custody arrangement would be impossible if Teresa were permitted to relocate to *1433 West Virginia. Further, the district court ordered that if Teresa chose to relocate, James would be granted sole physical custody of Colin. Teresa filed this timely appeal from the custody orders.
The district court made the following factual finding regarding its determination of custody:
Teresa and James are like most couples with young children. Both love Colin very much. Most of the daily responsibility for the care of Colin was managed by Teresa. James did participate however, and appears to have spent most of his time playing with Colin. Either parent in the absence of the other, could adequately provide for the child. If the Court were required to determine a primary custodian, Teresa would have a slight edge due to the fact that she performed more of the child care responsibilities. James’ role with the child was more playful. Since the institution of the joint physical arrangement there have been no difficulties, and both appear capable of caring for Colin.
The district court entered the following conclusions of law regarding the custody award:
4. The recent Supreme Court decision of Mosley v. Figliuzzi, 113 Nev. Adv. Op. 8 (Jan. 3, 1997) notes a preference for joint physical custody.
5. The Mosley decision requires a greater commitment by this Court to joint physical custody.
6. The fundamental proposition that both parents ought to be allowed to maintain significant and substantial involvement in the child’s life cannot be disputed. This involvement ought to be nearly equal as required by the Nevada Supreme Court.
NRS 125.480(1) states that:
In determining custody of a minor child in an action brought under this chapter, the sole consideration of the court is the best interest of the child. If it appears to the court that joint custody would be in the best interest of the child, the court may grant custody to the parties jointly.
Despite the language of the statute, the best interest of the child can never be determined in a vacuum without considering the other members of the family. The circumstances and well-being of the parents are inextricably entwined with the best interest of the child. If the circumstances and needs of the divorcing parents were given no consideration, in a significant number of cases, the court would be required to deny the divorce, or at least to require the parents to continue to live with one another, as that would be *1434 in the best interest of the child. But, that is neither the law nor public policy.
The district court entered the following findings of fact with respect to Teresa’s motion to relocate:
6. Teresa’s request to relocate is made in good faith.
7. With the exception of whether the move, if allowed, would allow a realistic opportunity for the noncustodial parent to maintain a visitation schedule that would preserve the parental relationship, there is no finding which would impede the move.
8. If the move were allowed, however, the true joint custody arrangement between Colin and his father would be impaired and a joint custodial relationship virtually impossible to maintain.
9. James is not the “noncustodial” parent specified in Nevada Supreme Court relocation decisions.
10. It is not in Colin’s best interest to allow the relocation. In the State of Nevada, the child can maintain a relationship with both parents.
11. There is nothing in Teresa’s request to relocate which creates a compelling reason to move. While her request is made in good faith, it is not compelling such that the true joint physical custody arrangement should be destroyed.
The district court entered the following conclusions of law with respect to Teresa’s motion to relocate:
7. The Court disagrees with Teresa’s assertion that the request to relocate should be granted since she has met the required showing under NRS 125A.350. See, e.g., Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995).
8. In relocation cases reviewed by the Court in which the Schwartz v. Schwartz analysis was successfully applied, the trial court had previously determined the applicant was the primary physical custodian. No case was found where a joint physical custodian was required to relocate simply upon demonstrating a parent’s good faith motive for the move.
9. The appropriate analysis in this case is whether relocation is in the best interest of the child.
10. It is inconsistent that both parties are capable of sharing joint physical custody and that one party should be able to defeat the Order by requesting to move under NRS 125A.350.
The district court’s conclusions of law suggest that the Schwartz factors need not be considered when a motion to relocate is made before permanent custody is granted.
*1435 NRS 125A.350 states:
If custody has been established and the custodial parent or a parent having joint custody intends to move his residence to a place outside of this state and to take the child with him, he must, as soon as possible and before the planned move, attempt to obtain the written consent of the other parent to move the child from the state. If the noncustodial parent or other parent having joint custody refuses to give that consent, the parent planning the move shall, before he leaves the state with the child, petition the court for permission to move the child. . . .
(Emphasis added.) Clearly, NRS 125A.350 applies to a parent who shares joint custody and seeks to move to a state other than Nevada. Further, we hold that NRS 125A.350 also applies to situations in which temporary custody has been established.
Several cases interpret NRS 125A.350 and should guide the district courts in such determination of whether to grant Teresa’s motion to relocate pursuant to NRS 125A.350. See, e.g., Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995); Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995); Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994); Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). Although the underlying facts in these cases concern a custodial parent seeking to leave Nevada, these cases do not explicitly or impliedly limit their applicability to parents with primary physical custody. These cases apply to all motions to relocate filed pursuant to NRS 125A.350 and should guide district courts in such determination.
Thus, Teresa’s desire to relocate should have been considered in the initial permanent custody determination, just as it would be if the motion to relocate were made after the divorce decree in which permanent custody is determined. The district court should have considered the factors outlined in Schwartz, 107 Nev. at 383, 812 P.2d at 1271, in determining the appropriate custody arrangements. [1]
*1436 In addition, the district court appears to misunderstand the holding of Schwartz and the subsequent cases applying the Schwartz factors. Good faith is not the only requirement for granting relocation. It is also not true, as Teresa apparently contends, that simply alleging the same factors that appear in one case in which relocation is granted automatically requires that relocation be granted in a case with similar factors. Each case must be decided on the basis of its own facts by applying the applicable principles of law.
The district court’s conclusions of law suggest that this court’s opinion in Mosley v. Figliuzzi, 113 Nev. 51, 930 P.2d 1110 (1997), virtually mandates that the joint physical custody arrangement which the McGuinesses have enjoyed must be maintained. There is no dispute that Nevada’s public policy favors “frequent associations and a continuing relationship with both parents’ ’ after divorce. NRS 125.460(1). There is also no question that if one parent moves away, the opportunities for daily or weekly physical contact are lessened. However, even though there may be a preference for joint physical custody in our law, other factors must also be considered. Physical separation does not preclude each parent from maintaining significant and substantial involvement in a child’s life, which is clearly desirable. There are alternate methods of maintaining a meaningful relationship, including telephone calls, e-mail messages, letters, and frequent visitation. Also, the well-being of a parent, which could be heightened by relocation, may have a substantial effect on the best interest of the child.
In Schwartz, this court first articulated the standard for evaluating motions to relocate pursuant to NRS 125A.350. “[I]n determining the issue of removal, the court must first find whether the custodial parent has demonstrated that an actual advantage will be realized by both the children and the custodial parent in moving to a location so far removed from the current residence that weekly visitation by the noncustodial parent is virtually precluded.” Schwartz, 107 Nev. at 382, 812 P.2d at 1271. According to Schwartz, if the moving parent satisfies this threshold requirement, the court must weigh a series of factors, including their impact on the family and “the extent to which the compelling interests of each member of the family are accommodated.” Id. at 383, 812 P.2d at 1271. In weighing and balancing the factors, this *1437 court set forth a nonexhaustive list of sub-factors that ‘ ‘may assist the court in reaching an appropriate decision.”[2] Id.
In Jones, this court refined the “actual advantage” standard enunciated in Schwartz and directed district courts to focus on the availability of reasonable alternative visitation. Jones, 110 Nev. 1266, 885 P.2d at 572. This court stated:
[A] custodial parent seeking removal does not need to show a significant economic or other tangible benefit to meet the threshold “actual advantage” showing. If the custodial parent shows a sensible, good faith reason for the move, the district court should evaluate the other factors enumerated in Schwartz, focusing on whether reasonable, alternative visitation is possible. If reasonable, alternative visitation is possible, the burden shifts to the noncustodial parent to show that the move is not in the best interests of the children. Such a showing must consist of concrete, material reasons why the move is inimical to the children’s best interests.
Id. “Reasonable, alternative visitation is visitation that ‘will provide an adequate basis for preserving and fostering a child’s relationship with the noncustodial parent if the removal is allowed.’ ” Id. at 1263, 885 P.2d at 570 (quoting Schwartz, 107 Nev. at 385 n.5, 812 P.2d at 1272 n.5). In citing opinions from other jurisdictions, this court emphasized that the district court may not deny a motion to relocate solely to maintain the existing visitation pattern, even if relocation entails a shift away from consistent day-to-day contact. Jones, 110 Nev. at 1266, 885 P.2d at 570.
In denying Teresa’s motion, the district court failed to seriously consider the possibility of reasonable, alternative visitation and focused on the fact that a move would render the current joint custody arrangement impossible. In so doing, the district court disregarded Schwartz and its progeny, which hold that the district court may not deny a parent’s motion to relocate simply because the proposed move will disturb the existing custody or visitation arrangement. This court has explicitly cautioned district courts *1438 against placing improper emphasis on the fact that a move might prevent weekly visitation for one parent, labeling such practice “problematic.” Gandee, 111 Nev. at 762, 895 P.2d at 1291. Moreover, in Trent we stated:
We find it disturbing that despite our decision in Schwartz, many district courts are using NRS 125A.350 as a means to chain custodial parents, most often women, to the state of Nevada. NRS 125A.350 is primarily a notice statute intended to prevent one parent from in effect “stealing” the children away from the other parent by moving them away to another state and attempting to sever contact. Given the legislative purpose behind NRS 125A.350, it should not be used to prevent the custodial parent from freely pursuing a life outside of Nevada when reasonable alternative visitation is possible.
Id. at 315, 890 P.2d at 1313 (footnote omitted).
The district court below, and numerous other judicial officers in this state have taken an approach to relocation motions brought under NRS 125A.350 that ignores the needs of the parents, even though these needs are vital to, and an integral part of, the considerations in determining the best interest of the children. If the parents’ needs are not considered, motions to relocate would almost never be granted, because close physical proximity to good parents is almost always in the child’s best interest. When one parent seeks to relocate, it is inevitable that one of the parents, as well as the child, will be deprived to a degree, especially if there has been joint physical custody. The premise of the interpretations in Schwartz and its progeny is that, unless the parents’ interests are considered as part of the calculus of these decisions, a parent properly seeking a motion to move would be irrevocably chained to this state by our child custody laws. If that premise is not considered by the district courts, NRS 125A.350 is rendered meaningless.
The California Supreme Court stated the relevant public policy in In Re Marriage of Burgess, 913 P.2d 473, 480-81 (Cal. 1996):
As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs for both parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest *1439 in minimizing costly litigation over custody and require the trial courts to “micromanage” family decisionmaking by second-guessing reasons for everyday decisions about career and family.
The footnote to this statement reads:
In this matter, the parties continue to dispute whether the mother’s change of employment was merely a “lateral” move or was “career enhancing.” The point is immaterial. Once the trial court determined that the mother did not relocate in order to frustrate the father’s contact with the minor children, but did so for sound “good faith” reasons, it was not required to inquire further into the wisdom of her inherently subjective decisionmaking.
Id. at 481 n.5.
Accordingly, we reverse the custody order of the district court and remand this matter to the district court for re-evaluation of the custody decision and the motion to relocate by the standards expressed in this opinion.
Rose, Young, and Maupin, JJ., concur.

These factors are:
(1) the extent to which the move is likely to improve the quality of life for both the children and the custodial parent; (2) whether the custodial parent’s motives are honorable, and not designed to frustrate or defeat visitation rights accorded to the noncustodial parent; (3) whether, if permission to remove is granted, the custodial parent will comply with any substitute visitation orders issued by the court; (4) whether the noncus-todian’s motives are honorable in resisting the motion for permission to *1436 remove, or to what extent, if any, the opposition is intended to secure a financial advantage in the form of ongoing support obligations or otherwise; (5) whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent.
Schwartz v. Schwartz, 107 Nev. 378, 383, 812 P.2d 1268, 1271 (1991).

“For example, in determining whether, and the extent to which the move will likely improve the quality of life for the children and the custodial parent, the court may require evidence concerning such matters as: (1) whether positive family care and support, including that of the extended family, will be enhanced; (2) whether housing and environmental living conditions will be improved; (3) whether educational advantages for the children will result; (4) whether the custodial parent’s employment and income will improve; (5) whether special needs of a child, medical or otherwise, will be better served; and (6) whether, in the child’s opinion, circumstances and relationships will be improved.” Schwartz, 107 Nev. at 383, 812 P.2d at 1271.