971 P.2d 1262 (1998)
Valerie J. HALBROOK, Appellant,
v.
Gregory D. HALBROOK, Respondent.
Valerie J. Halbrook, Appellant,
v.
Gregory D. Halbrook, Respondent.
Nos. 30880, 31441.
Supreme Court of Nevada.
December 31, 1998.
*1263 Law Offices of Patricia L. Vaccarino, Las Vegas, for appellant.
Stephen R. Minagil, Las Vegas, for respondent.

OPINION
SHEARING, J.
On January 3, 1996, appellant, Valerie Halbrook, and respondent, Greg Halbrook, were divorced. The divorce decree awarded Valerie and Greg joint legal and physical custody of their only child, Erica, born February 7, 1987. The custody arrangement provided that Erica spend half of each week with each parent. According to this arrangement, although Erica spent 4.25 more days per month with Valerie than with Greg, neither party was designated primary physical custodian. The divorce decree also provided that the parties equally share expenses relating to Erica.
In February 1997, Valerie, a sales representative for Sprint, learned of a sales position with Sprint that would advance her career, but require her to move to Plano, Texas. Valerie requested Greg's permission to relocate to Texas with Erica; Greg denied her request. On March, 19, 1997, Valerie filed a motion with the district court to relocate with Erica to Plano, Texas. The district court held a preliminary hearing on this motion on April 2, 1997, and evidentiary hearings on April 25 and May 12, 1997.
On July 2, 1997, the district court entered its findings of fact, conclusions of law and order. In its order, the district court denied Valerie's motion to relocate and awarded physical custody of Erica to Greg in the event Valerie relocated. On July 5, 1997, Greg filed a motion for attorney fees and costs. On October 15, 1997, the district court entered an order granting Greg's motion for attorney fees and costs. Valerie filed a timely notice of appeal challenging both of these orders.
Valerie argues that the district court erred in evaluating whether she filed her NRS 125A.350 motion to relocate in good faith. The district court included the following factual findings in its July 2, 1997 order denying Valerie's motion to relocate:
11. It does not appear to the Court that Valerie's proposed relocation of the child is in good faith when:

*1264 (a) the shared custody arrangement resulting from litigation one year ago worked so well in furtherance of the best interest of the child;
(b) no effort has been made by Valerie to improve her earnings in Las Vegas after only a one year reduction of income; and
(c) the child was involved in this issue by having an expectation of moving created prior to Valerie's Motion being filed.
In Schwartz v. Schwartz, 107 Nev. 378, 382, 812 P.2d 1268, 1270 (1991), this court first articulated the standard for evaluating motions pursuant to 125A.350:
"[I]n determining the issue of removal, the court must first find whether the custodial parent has demonstrated that an actual advantage will be realized by both the children and the custodial parent in moving to a location so far removed from the current residence that weekly visitation by the noncustodial parent is virtually precluded."
In Jones v. Jones, 110 Nev. 1253, 1266, 885 P.2d 563, 572 (1994), this court refined the "actual advantage" standard:
[A] custodial parent seeking removal does not need to show a significant economic or other tangible benefit to meet the threshold "actual advantage" showing. If the custodial parent shows a sensible, good faith reason for the move, the district court should evaluate the other factors enumerated in Schwartz....
Id. at 1266, 885 P.2d at 572.
In Gandee v. Gandee, 111 Nev. 754, 757, 895 P.2d 1285, 1286 (1995) (quoting Jones, 110 Nev. at 1261, 885 P.2d at 569), this court held that "[a] `good faith' reason means one that is not designed to frustrate the visitation rights of the noncustodial parent." In the past, this court has found that the opportunity for "career advancement" constitutes a "good faith reason" for a parent to relocate outside Nevada. See, e.g., Gandee, 111 Nev. at 757, 895 P.2d at 1287 (holding that a promotion from a position as sales associate at Reno's Montgomery Ward & Co. to general manager of its Medford, Oregon, store was a sensible, good faith reason for father's move); Trent v. Trent, 111 Nev. 309, 315-16, 890 P.2d 1309, 1313 (1995), (holding that a mother's desire to pursue a romantic relationship outside Nevada accompanied by the potential for improved financial stability constituted a good faith reason to relocate with her daughter); Jones, 110 Nev. at 1260-61, 885 P.2d at 568-69 (holding that a mother seeking to relocate in order to enhance her employment opportunities and pursue a romantic relationship constituted sensible, good faith reasons for her move).
Valerie testified that her annual income as a sales representative for Sprint in Las Vegas decreased significantly in 1996, due to changes in the Las Vegas telephone and related services market. Valerie explained that increased competition in the marketplace ensured additional future decreases in her once high salary. The Plano (Dallas) market, which is less competitive, is guided by different business practices and offers a higher margin for profit.
In addition, the Plano branch office of Sprint has targeted Valerie for future managerial positions unavailable to her in Las Vegas. Furthermore, Sprint offered Valerie a generous financial package to compensate her for her move and living expenses in Plano until she builds a stable client base. Larry Daldin, Valerie's Plano supervisor, confirmed these facts in his testimony at the evidentiary hearing.
Based on this evidence, we conclude that the district court erred in finding that Valerie failed to present a "sensible, good faith reason" for her move to Plano, Texas. Furthermore, the district court's finding that Valerie did not file her motion in good faith is at odds with the prior holdings of this court and is clearly erroneous.
In addition, the district court's order renders it apparent that the district court improperly weighted the fact that Greg would no longer have weekly contact with his daughter and failed to seriously consider the possibility of alternative visitation. In its July 2, 1997 order, the district court did not even mention the possibility of alternative visitation but merely found that a move to Texas would disrupt the existing visitation pattern:

*1265 2. The physical custody arrangement in effect since ... October 16, 1995 ... is working in the best interest of this minor child.
...
6. The assistance that Gregory provides on an almost daily basis to the child is invaluable, is in the best interest of the child that it continue, and guarantees that the child's needs are always care [sic] for by a parent.
...
10. Relocation of the child to Texas would result in absence of family, most importantly the absence of her father and his performing critical parent roles and responsibilities such as sharing and obtaining health care for the child and being able to care for the child from 3:00 p.m. on....
The district court offered the following conclusions of law:
2. This case differs from Trent and Jones in that Valerie is not someone who is going to be imprisoned in Las Vegas when she is seriously able to make a better life for herself somewhere else.
3. The best interest of the child is the overriding consideration and focus of the Court, especially where the party requesting the relocation of the child shared physical custody on an [sic] nearly equal basis that is undisputed to be in the child's best interest.
The district court may not deny a removal petition solely to maintain the existing visitation pattern, even if removal means a shift away from consistent day-to-day contact. Jones, 110 Nev. at 1266, 885 P.2d at 572. In fact, this court has explicitly cautioned the district court against placing improper emphasis on the shift away from weekly contact in evaluating an NRS 125A.350 motion, labeling such practice "problematic." Gandee, 111 Nev. at 761, 895 P.2d at 1289.
We find it disturbing that despite our decision in Schwartz, many district courts are using NRS 125A.350 as a means to chain custodial parents, most often women, to the state of Nevada. NRS 125A.350 is primarily a notice statute intended to prevent one parent from in effect "stealing" the children away from the other parent by moving them away to another state and attempting to sever contact. Given the legislative purpose behind NRS 125A.350, it should not be used to prevent the custodial parent from freely pursuing a life outside of Nevada when reasonable alternative visitation is possible....
Trent, 111 Nev. at 315, 890 P.2d at 1312 (footnote omitted).
This court has stated that, "[r]easonable and realistic visitation is visitation that `will provide an adequate basis for preserving and fostering a child's relationship with the noncustodial parent if the removal is allowed.'" Id. at 316, 890 P.2d at 1313, (quoting Schwartz, 107 Nev. at 385 n. 5, 812 P.2d at 1272 n. 5 (1991)). The district court erroneously assumed that the sole issue in these relocation motions is the best interests of the child. See McGuinness v. McGuinness, 114 Nev. ___, 970 P.2d 1074 (1998), which sets forth the standard.
Under the current custody arrangement, Greg spends one hundred and thirty days per year with Erica, many of which she spends at school. Valerie's proposed visitation plan offers Greg non-school days of visitation with Erica, including: (1) eight weeks each summer, (2) one or two weeks at Christmas (even and odd years respectively), (3) both spring breaks, (4) Thanksgiving break on even years, (5) all three-day weekends (one every other month), and "any other visitation which Greg requests, so long as it does not interfere with Erica's schooling, and can be arranged in advance." In the affidavit accompanying her motion, Valerie stated, "I want this court to understand that I am more than open to discussing any further reasonable visitation that Greg seeks to have or that this Court would think that he should receive."
We conclude that Valerie's proposed visitation plan is more generous and financially feasible than other plans previously accepted by this court. See, e.g., Trent, 111 Nev. at 316-17, 890 P.2d at 1314 (holding that frequent visits by plane were adequate substitute for more regular local contact); *1266 Schwartz, 107 Nev. at 385, 812 P.2d at 1272 (holding that extended summer visitation adequately replaced weekend visitation). The district court's failure to consider Valerie's proposed visitation plan in accordance with Schwartz and its progeny is clearly erroneous.
Valerie also argues that the district court erred in awarding attorney fees to Greg. In view of this court's decision on other issues, the award of attorney fees must also be reversed. However, an award of attorney fees may be appropriate upon reevaluation of Valerie's motion to relocate. Duff v. Foster, 110 Nev. 1306, 885 P.2d 589 (1994) is cited for the proposition that attorney fees are not allowable in post-divorce proceedings. The award of attorney fees in Duff was considered on the basis of NRS 18.010(2)(b) which allows for an award of attorney fees to the prevailing party "when the court finds that the claim ... of the opposing party was brought without reasonable ground or to harass the prevailing party." To the extent that Duff does not recognize that attorney fees may be awarded in post-divorce proceedings under NRS 125.150(3), that decision is overruled. In Leeming v. Leeming, 87 Nev. 530, 532, 490 P.2d 342, 343 (1971), this court held that the power of the court to award attorney fees in divorce actions remains part of the continuing jurisdiction of the court in appropriate post-judgment motions relating to support and child custody. Leeming was recently cited with approval in Love v. Love, 114 Nev. 572, 581, 959 P.2d 523, 529 (1998).
Accordingly, we reverse the order of the district court and remand the case for reevaluation of Valerie's motion to relocate in keeping with this opinion.
ROSE, YOUNG, and MAUPIN, JJ., concur.
SPRINGER, C.J., dissenting.
I dissent for the reasons stated in McGuinness v. McGuinness, 114 Nev. ___, 970 P.2d 1074 (1998) (Springer, C.J., dissenting).