**130 Nev., Advance Opinion 50**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IAN SCOTT DRUCKMAN, Appellant, vs. AUDRIA BERNICE RUSCITTI, Respondent. | No. 60598 |
| IAN SCOTT DRUCKMAN, Appellant, vs. AUDRIA BERNICE RUSCITTI, Respondent. | No. 61038 |

**FILED**

JUN 26 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Consolidated appeals from district court orders establishing child custody, granting a motion to relocate with the minor child, and awarding attorney fees. Eighth Judicial District Court, Family Court Division, Clark County; William B. Gonzalez, Judge.

*Affirmed in part, reversed in part, and remanded.*

Kunin & Carman and Michael P. Carman, Las Vegas; Fine Law Group and Corinne M. Price, Henderson,
for Appellant.

McFarling Law Group and Emily M. McFarling Benson, Las Vegas,
for Respondent.

Katherine L. Provost, Shelley Booth Cooley, and Michelle A. Hauser, Las Vegas,
for Amicus Curiae State Bar of Nevada, Family Law Section.

12/17/14: Corrected per letter to publishers. CT

14-20944

BEFORE THE COURT EN BANC.

## OPINION

By the Court, DOUGLAS, J.:

"The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." NRS 126.031(1). In this case, we examine the child custody rights of unmarried parents when the father's paternity has been established pursuant to statute but the district court has not issued a child custody order. Additionally, we examine the district court's decision to award the mother primary physical custody of the child and to approve her relocation with the child outside of Nevada. Ultimately, although both parents came to the court with equal rights to custody of the child, we hold that the district court did not abuse its discretion in granting the mother's motion for primary physical custody and relocation because the court considered all the relevant and necessary factors, including the reasons for the relocation and the child's best interest, before making the determination.

## FACTS

Audria Ruscitti and Ian Druckman had a child together. The two never married, but Ian voluntarily established himself as the child's father with a written acknowledgment of paternity under NRS 126.053. After the child's birth, the parties lived and parented the child together but did not have a judicial child custody order. They discussed moving out of Nevada together, but separated before they could do so. When Ian moved out of the home, Audria relocated with the child from Nevada to California for better job opportunities, without Ian's consent or knowledge. After learning of Audria's move, Ian filed a motion in the Nevada district

SUPREME COURT
OF
NEVADA

(O) 1947A

2

court for the child's immediate return and for an award of joint legal and primary physical custody.[1] In response, Audria filed an opposition and requested that the court award her sole legal and primary physical custody of the child, and allow the child to remain in California with her.

The district court determined that NRS 125C.200, the statute governing relocation by an established custodial parent, was inapplicable because the couple did not have a judicial child custody order. Further, the district court awarded Audria and Ian joint legal custody and Audria primary physical custody and granted her motion for relocation with the child outside of Nevada. In this appeal, the parties dispute the nature of their custodial rights and whether the district court properly allowed Audria to relocate out of state with the child.[2]

## DISCUSSION

*Child custody presumptions for unmarried parents*

"The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." NRS 126.031(1). Thus, married and single parents are afforded the same rights and protections regarding their respective children.

Here, the parties signed a voluntary acknowledgment of Ian's paternity shortly after the child's birth. A voluntary acknowledgment of

---

[1]Pursuant to NRS 125A.305(1)(a), Nevada has jurisdiction to hear this matter because Nevada was the child's home state within six months before this proceeding commenced.

[2]This court invited the Family Law Section of the State Bar of Nevada to file an amicus curiae brief addressing the relocation standard for unmarried parents.

paternity is deemed to have the same effect as a judgment or order of a court determining that a parent-child relationship exists. NRS 126.053(1). This case presents an issue concerning what custody rights exist when parentage has been established by statute between unmarried parents, such that the parent-child relationship exists, but no court has issued a child custody order.[3]

We conclude that unmarried parents have equal custody rights regarding their children, absent a judicial custody order to the contrary. We have held that when two parents seek custody of their children in an initial custody action, they begin as equals. *Rico v. Rodriguez*, 121 Nev. 695, 705, 120 P.3d 812, 818 (2005) (quoting *McDermott v. Dougherty*, 869 A.2d 751, 770 (Md. 2005)) If parents begin an initial custody action as equals, then—prior to a judicial order establishing otherwise—the parents are entitled to equal rights to their children. This conclusion derives further support from the constitutional protections parents enjoy regarding the care, custody, and control of their children, *see id.*, as well as a parent's legal rights in making major decisions regarding his or her child's upbringing, including where the child will live. *See Rivero v. Rivero*, 125 Nev. 410, 421, 216 P.3d 213, 221 (2009); NRS 126.036(1). Accordingly, in seeking the district court's resolution of this custody dispute, Audria and Ian appeared before the court holding equal custody rights over their child.

---

[3]We note that under NRS 126.031(2)(a), an unmarried mother has primary physical custody unless an order determining paternity has been entered. Here, the voluntary acknowledgment of paternity precluded Audria from having primary physical custody by operation of law. *See* NRS 126.053(1).

*Custody and relocation*

Having established that Audria and Ian begin with equal custody rights to their child, we must next determine the applicable standard for deciding the parties' motions for custody and Audria's motion to relocate with the child to California.

*NRS 125C.200's applicability*

NRS 125C.200 governs relocation by a custodial parent with the child out of state and provides:

> If custody has been established and the custodial parent intends to move his or her residence to a place outside of [Nevada] and to take the child with him or her, the custodial parent must, as soon as possible and before the planned move, attempt to obtain the written consent of the noncustodial parent to move the child from this State. If the noncustodial parent refuses to give that consent, the custodial parent shall, before leaving this State with the child, petition the court for permission to move the child.

The district court correctly determined that NRS 125C.200 was inapplicable. In *Potter v. Potter*, we concluded that the statute applied only to instances where a parent has been granted primary physical custody of his or her child and wants to relocate outside of Nevada. 121 Nev. 613, 617-18, 119 P.3d 1246, 1249 (2005). Here, no court had awarded one party primary physical custody, and the parties equally held custody rights to their child; therefore, NRS 125C.200 was inapplicable.

Although NRS 125C.200 does not control this matter, the policy behind the statute is prudent and may be used as a guide in instances where no custodial order exists and the parents dispute out-of-

state relocation. NRS 125C.200 is designed to preserve a parent's rights and familial relationship with his or her children. *See Schwartz v. Schwartz*, 107 Nev. 378, 381-82, 812 P.2d 1268, 1270 (1991).[4] Removal of a child over the other parent's objection may create unfair legal and practical advantages for the relocating parent in subsequent custody proceedings. The child would likely develop a routine and become accustomed to life in the new state. This factor would weigh in favor of awarding the relocating parent primary custody because stability is important in a child's life. Further, the non-relocating parent would have to incur substantial travel costs to maintain a relationship with the child, which could be insurmountable and result in a weakened parent-child relationship. Thus, we hold that when parents have equal custody rights of their child, one parent may not relocate his or her child out of state over the other parent's objection without a judicial order authorizing the move. The proper procedure is to file a motion for primary physical custody with a request to relocate outside of Nevada.

Ultimately, when considering a motion to relocate a minor child out of Nevada by an unmarried parent who shares equal custody of the child, the district court must base its decision on the child's best interest. *See Potter*, 121 Nev. at 618, 119 P.3d at 1250; *see also* NRS 125.480(4). However, the requesting parent must demonstrate "'a sensible, good faith reason for the move'" before the court considers the motion. *Cook v. Cook*, 111 Nev. 822, 827, 898 P.2d 702, 705 (1995)

---

[4]In *Schwartz*, this court interpreted NRS 125A.350. NRS 125C.200 was substituted in revision for NRS 125A.350, but the policy behind the statute remained the same.

(quoting *Jones v. Jones*, 110 Nev. 1253, 1266, 885 P.2d 563, 572 (1994)). If the parent clears this hurdle, the district court can then consider the relocation motion. The moving parent's failure to establish a good faith reason for the move is grounds to deny the request to relocate with the child. The court may nevertheless establish the parents' custodial rights apart from the relocation if either parent so requests.

In considering a motion to relocate and determining the parents' custodial rights, the court must decide "whether it is in the best interest of the child to live with parent A in a different state or parent B in Nevada." *Potter*, 121 Nev. at 618, 119 P.3d at 1250. In *Potter*, this court indicated that the district court may consider, among other factors, whether one parent has de facto primary custody. Although this court did not refer to the relocation factors set forth in *Schwartz*, we take this opportunity to clarify *Potter* and conclude that the district court must incorporate the five *Schwartz* factors into its best-interest analysis:

> (1) the extent to which the move is likely to improve the quality of life for both the child[ ] and the custodial parent; (2) whether the custodial parent's motives are honorable, and not designed to frustrate or defeat visitation rights accorded to the noncustodial parent; (3) whether, if permission to remove is granted, the custodial parent will comply with any substitute visitation orders issued by the court; (4) whether the noncustodian's motives are honorable in resisting the motion for permission to remove, or to what extent, if any, the opposition is intended to secure a financial advantage in the form of ongoing support obligations or otherwise; (5) whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve

SUPREME COURT
OF
NEVADA

(O) 1947A

7

the parental relationship with the noncustodial parent.[5]

*Schwartz*, 107 Nev. at 382-83, 812 P.2d at 1271. A court cannot adequately evaluate a child's best interest in the custody determination without considering the circumstances of the relocation request. Indeed, as we have previously recognized, "[t]he circumstances and well-being of the parents are inextricably intertwined with the best interest of the child." *See McGuinness v. McGuinness*, 114 Nev. 1431, 1433, 970 P.2d 1074, 1076 (1998).

Moreover, removal without consent violates the spirit of the law and may subject the offending parent to negative consequences.[6] For instance, if a parent unlawfully relocates his or her child out of Nevada and later moves for primary physical custody, the district court should not consider any factors from the child's time in the new state—such as the child's new school, friends, or routine—in the best-interest determination.

Here, the district court did not abuse its discretion in awarding Audria primary physical custody and approving her relocation

---

[5]We recognize that this list is not exhaustive and that a district court may have to consider numerous subfactors in making its determination. *See Schwartz*, 107 Nev. at 383, 812 P.2d at 1271.

[6]This rule is inapplicable to any instance where a parent relocates his or her child to protect the child from imminent danger and reports the relocation to a law enforcement or child welfare services agency as soon as circumstances allow. Such exigent circumstances were not present in this case because Audria stated that she moved to California to further her career. For the same reason, the custodial presumptions for child abduction are not implicated. *See* NRS 125.480(7); NRS 125C.240. The district court found that Audria's removal of the child did not constitute abduction and was made in good faith.

SUPREME COURT
OF
NEVADA

(O) 1947A

with the child to California. The court found a good faith reason for the move: Audria's employment opportunities in California and the fact that the parties had previously contemplated moving together out of the state. As for custody, the district court—after considering all relevant factors, including the *Schwartz* factors—determined that living with Audria in California was in the child's best interest. In evaluating the child's best interest under NRS 125.480(4), the district court considered that while the child had a good relationship with both parents and they could each provide a nurturing home, the child had formed a bond with Audria's older daughter. As for the *Schwartz* factors, the court found that Audria's improved financial situation would benefit the child and that Ian would have reasonable alternative visitation. Further, the court did not incorporate any factors resulting from the child's time in California into its decision. Accordingly, we affirm the district court's order awarding Audria primary physical custody of the child and allowing the child to remain with her in California.

Finally, Ian contends that the district court abused its discretion in awarding Audria attorney fees as a sanction against Ian for filing a frivolous motion to stay the order pending appeal. We conclude that Ian's motion was based on reasonable grounds because he sought stability for his child.

Supreme Court
of
Nevada

(O) 1947A

Therefore, we reverse the district court's order sanctioning Ian with attorney fees and remand the matter for reconsideration.[7]

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____ J.
Parraguirre

---

[7]Ian also contends that the district court improperly limited his presentation of evidence, and that the district judge should be disqualified for bias. We conclude that these contentions are without merit.

SAITTA, J., with whom CHERRY, J., agrees, dissenting:

While I agree with my colleagues in concluding that unmarried parents should be treated equally with married parents and have the same custody rights to their children, the majority fails to fully recognize that Audria's removal of the child from the state without Ian's consent or prior judicial authorization was wrongful. I am deeply concerned that the majority opinion may encourage an unmarried parent to relocate the child without the other parent's knowledge or consent in an effort to create an unfair advantage in a custody determination.

NRS 125C.200 requires a custodial parent to obtain the noncustodial parent's consent or court permission before removing the child from the state. Although, as the majority concludes, NRS 125C.200 only applies when the moving parent has primary physical custody of the child, I see no reason why parents with equal legal custody rights should have any less protections than those afforded by this statute. This court has previously recognized that a parent with joint physical custody must move the district court for primary physical custody for the purpose of relocating. *See Potter v. Potter*, 121 Nev. 613, 618, 119 P.3d 1246, 1249 (2005). Just because our state legislature has not designed a law to address the specific factual situation presented in this case, it does not follow that an unmarried father who established his legal custody rights by an expedited process should have any less rights than a married parent, a parent with joint custody, or a noncustodial parent. To hold otherwise undermines the legislative directive in NRS 126.031(1) that the parent and child relationship extends equally to every parent regardless of marital status.

Legal custody encompasses the right to make major decisions regarding the child's upbringing and contemplates that parents consult with each other in making decisions that are in their child's best interest. *See Rivero v. Rivero,* 125 Nev. 410, 420-21, 216 P.3d 213, 221 (2009). When parents who share equal legal custody rights cannot agree on a major decision concerning their child's upbringing, they should appear before the court on equal footing to decide the custody dispute in accordance with the law. *Id.* at 421, 216 P.3d at 221-22. Deciding where and with whom the child will live constitutes a major decision in a child's upbringing.

Here, the parties established Ian's legal rights and responsibilities as the child's legal father when they executed the affidavit of paternity. *See* NRS 126.053. That affidavit also prohibited Audria from having primary physical custody of the child as a matter of law, absent any judicial determination to the contrary. *See* NRS 126.031(2)(a). The record established that Ian is an actively involved father in the child's life, and thus, he has a fundamental right to make decisions as to the care, custody, and control of his child. *See Troxel v. Granville,* 530 U.S. 57, 65 (2000); *see also Lehr v. Robertson,* 463 U.S. 248, 261-62 (1983) (recognizing constitutional protections for a biological father who grasps the opportunity to develop a relationship with his child and accepts responsibility for the child's future). Therefore, securing Ian's consent or court permission before removing the child was a requirement, not merely the better practice, as the majority suggests.



In fact, several factors weigh against awarding custody to a parent who has improperly removed a child without the other parent's consent. For instance, in determining the child's best interest, the district court must consider the parents' ability to cooperatively meet the child's needs, as well as which parent is more likely to foster the child's association and relationship with the other parent. NRS 125.480(4)(c), (e). And when deciding a relocation request, a court must consider whether the moving parent's motives are honorable and not designed to frustrate the noncustodial parent's visitation rights. *See Schwartz v. Schwartz*, 107 Nev. 378, 383, 812 P.2d 1268, 1271 (1991). Relocation without consent may be a basis for awarding custody to the other parent. *See* NRS 125C.200; *see also* NRS 125.480(7) (creating a rebuttable presumption against custody with a parent who has abducted the child).

As for the unfair legal advantage created by this type of unilateral removal by one parent, the majority acknowledges that a court should not consider any new circumstances from the move in its analysis, but then concludes that the district court did not incorporate any of these facts into the decision in this case. I disagree. Removal of the child before deciding the case necessarily creates an advantage for the relocating parent who has an opportunity to establish a new environment and status quo for the child, which cannot be easily disregarded, especially if the child has been in the new environment for a lengthy period of time. A court would be hesitant to disrupt the stability of a child living in a new home, established in a school and community, and surrounded by new friends. The need for stability in a child's life is of utmost importance. *See Ellis v. Carucci*, 123 Nev. 145, 150, 161 P.3d 239, 242 (2007). The relocating

parent should not be rewarded for disregarding the other parent's legal custody rights.

Going forward, no one should take away from the majority opinion that a parent with equal custody rights can remove a child and obtain permission later. Audria's actions left Ian in the position of having to file a motion for custody and return of the child. Yet Audria had the burden to establish that she was entitled to primary custody and that relocation was in the child's best interest *before* removing the child from the state. The district court failed to recognize that Audria's unilateral removal of the child was improper, but rather determined that Audria relied on proper legal advice that she did not need Ian's consent. By starting with this faulty premise, the district court disregarded the effect of Audria's actions on the custodial determination and failed to place the burden squarely on Audria to establish that removal was in the child's best interest. And even though the district court made findings that relocation was in the child's best interest after the fact, the establishment of the child in a new environment necessarily gave Audria a strategic advantage, and Audria's actions should have factored against awarding custody in her favor. *See* NRS 125.480(4)(c), (e); *Schwartz*, 107 Nev. at 382-83, 812 P.2d at 1271. Instead, the district court determined that Audria's motives were honorable and that she would continue to foster a relationship between the child and his father. But removal of the child without first obtaining permission certainly casts doubt on the findings of honorable motives and that Audria had a good faith reason for the move.

Supreme Court
OF
Nevada

(O) 1947A

4

Had the district court considered these factors in the proper light, the result may very well have been different. I would therefore reverse and remand to the district court for a new custody determination, and thus, I respectfully dissent.

_____, J.
Saitta

I concur:

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A