*1255
 
 OPINION
 

 Per Curiam:
 

 Appellant Kimberly Ann Porter (Porter) and respondent
 
 *1256
 
 Michael S. Jones (Jones) have joint legal custody of their two sons; however, Porter is the primary physical custodian, while Jones has weekly visitation. Porter wishes to move to Chico, California, with the two boys. Pursuant to NRS 125A.350, Nevada’s “anti-removal” statute, Porter sought permission from Jones to move the boys out of the state. When Jones denied her request, Porter petitioned the district court for removal, and was again denied. Porter appeals. For the following reasons, we reverse the order of the district court and remand with instructions to grant Porter’s petition.
 

 FACTS
 

 Porter and Jones were divorced in 1989. Porter, a full-time nurse, has been the primary custodian for her two sons, ages seven and nine, for the past five years. Porter testified that she has been considering leaving Nevada for some time. After the divorce, she desired to return to the San Francisco Bay Area where her family lived but did not do so because of the expense, the potential trauma the move may cause the boys, and the fact that she felt the area was too crowded to be a good environment for the children.
 

 Porter also desires to leave Nevada to seek expanded opportunities in nursing. During her eleven-year career as a registered nurse, Porter has worked at all of the local hospitals in the Reno-Sparks area. She testified that she had “topped out” in her career here. Porter hopes to obtain her masters and achieve higher earning capacity elsewhere.
 

 Porter testified that four years after the divorce, she began looking for a good area in which to raise the boys and seek expanded career opportunities for herself. In 1992, in the midst of her search, Porter met Russell James (James), who resides in Chico, California. The couple became acquainted through their mutual involvement in hot air ballooning. Porter and James were friends for a year before they began a romantic relationship.
 

 James resides on a farm in Chico, California, near the Sacramento River. Porter and the boys began spending weekends with James in Chico in February of 1993, and plan to live with James if they move to Chico. Porter testified that though she and James have discussed marriage, they are not engaged and currently have no plans to get married, having decided that they both want to wait for a while before making such a big decision. She also testified that James is good with her boys, is never violent, and is a divorced father who also spends a lot of time with his own two children.
 

 After a few months of interviewing in Chico, Porter was offered a position at Chico Community Hospital, with the same general hours she had at her job in Reno and a slightly higher
 
 *1257
 
 wage. In contrast to her position in Reno, where nurses working for twenty years longer than Porter were making only two dollars an hour more, there was a structure in place for advancements and pay increases. Additionally, Porter testified that Chico Community Hospital hoped to use her as a labor and delivery consultant as they expanded that department. Porter stated that she could also obtain her masters degree from California State University in Chico.
 

 Porter testified that, having weighed everything, she felt Chico was a better environment for the children because it is a rural community offering more outdoor activities — horseback riding, pack trips, fishing, and farm activities — than Porter can provide for the boys in the Reno/Sparks area. Before accepting the nursing position in Chico, however, Porter discussed the move with her sons, who told her on more than one occasion that they wanted to move.
 

 Jones, the boys’ father and joint legal custodian, does not want Porter to move the boys to Chico and refuses to grant her the requisite permission. Jones testified that he is concerned about the cost of gas for the drive to Chico to pick up the boys.
 
 [1]
 
 Additionally, Jones does not feel that it is a good moral example for Porter to live with James without being married.
 

 Lastly, Jones testified that the move would make adequate visitation impossible. Currently, Jones has the boys every other weekend from Friday afternoon until Tuesday morning. On off weeks, Jones has the boys on Monday night. Jones testified, however, that he has never taken more than two weeks out of the possible six weeks of summer visitation. Jones stated that this is because he has only two weeks paid vacation, and he is unable to afford to pay for four weeks of day care during the summer when he is working. Porter testified that Jones has never attempted to work out an arrangement with her to abate support payments during this time. Also, Jones did not exercise his full visitation rights for over a year when he dropped his weeknight visitation, asserting that it was “inconvenient” to pick the kids up in Stead, where they were living at that time. Additionally, despite Porter’s encouragement to do so, Jones has never spent more than his accorded time with the boys.
 
 [2]
 

 
 *1258
 
 In a letter to Jones explaining her reasons for the move, Porter outlined a revised visitation schedule in which she suggested that Jones could have the boys during regularly scheduled holidays, during their spring break, for two weeks at the beginning of summer and two weeks at the end, and for any three-day weekend that he wanted. Porter also promised that Jones could see the boys any time she visited the area. She suggested that for transportation for weekend visits, they could meet halfway in Quincy, California, or alternatively, the receiving parent could go the distance to pick up the boys. Porter suggested that Jones make any changes he felt were necessary to her proposed visitation schedule and offered to meet with him in order to discuss the move.
 
 [3]
 
 Additionally, at the removal hearing, Porter’s counsel stated that Porter was open and flexible to increase her proposed visitation to whatever the district court or Jones deemed appropriate to allow her to move with the boys.
 

 The district court did not issue any written findings of fact or conclusions. At the end of the removal hearing, the district court stated that there were no physical advantages to Chico over Reno and that there was no economic advantage in the move to Chico. The district court further stated:
 

 The mother wants to go to Chico to pursue a relationship with a man. Which I think is a good reason. . . . What is the problem here, is the father doesn’t want the children to go, and this relationship is a short one. Now, I feel like I have got to weigh that against the . . . situation of the father. . . . The children are entitled to, and certainly benefit from a continuation of what is an exemplary, everything considered, visitation schedule. [T]hat brings me to the other factor here. . . . This move, in my opinion, will cause — will have a negative impact on this father’s relationship with the children because of his economic condition and because— because he’s a timid man. And I do not believe he will make the extra effort to continue the relationship with his children given the roadblock of whatever miles it is. It seems like it’s hard enough for him to do it now. And maybe it’s time he gets a little more aggressive, but I consider these factors to be the balancing point here. Whether or not the advantage to the move that will come from pursuing this relationship outweighs the risk of the loss of the father’s company.
 

 The day after the hearing, the judge contacted the parties’ counsel by phone and informed them that Porter’s removal petition was denied.
 

 
 *1259
 

 DISCUSSION
 

 Porter argues that the district court erred in weighing the evidence, thus making an improper determination under Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). She contends that the district court gave undue weight to Jones’ timidity and to its speculation that Jones would not continue his relationship with the children if they were allowed to move, thus placing too great a burden on her to show the advantages of the move. Porter also asserts that the district court improperly found that Jones’ visitation had been “exemplary,” mischaracterized her relationship with James as a “short one,” and failed to consider the possibility of reasonable, alternative visitation. We agree.
 

 In
 
 Schwartz,
 
 a case of first impression and the only case to date on NRS 125A.350, we interpreted Nevada’s “anti-removal” statute.
 
 [4]
 
 We concluded that the overall purpose of NRS 125A.350 is to preserve the rights and relationship of the noncustodial parent with respect to his or her children.
 
 Schwartz,
 
 107 Nev. at 382, 812 P.2d at 1270 (citing Holder v. Polanski, 544 A.2d 852, 855 (N.J. 1988)). We farther concluded that the proper calculation in determining whether to grant the custodial parent permission to move the children involves a balancing between “‘the custodial parent’s interest in freedom of movement as qualified by his or her custodial obligation, the State’s interest in protecting the best interests of the child, and the competing interests of the noncustodial parent.’”
 
 Schwartz,
 
 107 Nev. at 382, 812 P.2d at 1270 (quoting
 
 Holder,
 
 544 P.2d at 855).
 

 In determining the issue of removal, the district court must first find “whether the custodial parent has demonstrated that an actual advantage will be realized by both the children and the custodial parent in moving to a location so far removed from the current residence that weekly visitation by the noncustodial parent is virtually precluded.”
 
 Schwartz,
 
 107 Nev. at 382, 812 P.2d at 1271.
 
 [5]
 

 
 *1260
 
 It is not clear in this case whether the district court found that Porter made this threshold showing. Jones argues that the only showing Porter made of any kind of “advantage” was that the move would allow Porter to pursue a relationship with James — a relationship characterized by both Jones and the district court as short and relatively insignificant. We conclude that such a characterization is not supported by the facts. Porter’s testimony reveals that the relationship is one based on friendship that has evolved over many months. Additionally, the record indicates that Porter’s desire to move to Chico is the result of much thought and research regarding career opportunities and lifestyle choices, rather than a mere whim to pursue a frivolous, short-term romance.
 
 [6]
 

 In assessing whether Porter’s desire to move to Chico to provide her children with a more rural lifestyle, to pursue expanded career opportunities, and to pursue a serious relationship, is enough to meet the “actual advantage” threshold requirement of
 
 Schwartz,
 
 we note that the custodial parent need not prove a tangible economic or career advantage in meeting this burden, as such issues are subfactors to be considered in a balancing test employed by the court
 
 after
 
 the custodial parent makes the threshold showing.
 

 Moreover, in assessing the “actual advantage” requirement, courts are not free to ignore noneconomic factors likely to contribute to the well-being and general happiness of the custodial parent and children.
 
 See
 
 Gruber v. Gruber, 583 A.2d 434 (Pa.
 
 *1261
 
 Super. Ct. 1990). We recognize that what is in the best interest of the children cannot be addressed without considering the best interest of the other members of the household in which they live.
 
 See
 
 Kaneski v. Kaneski, 604 A.2d 1075 (Pa. Super. Ct. 1992). The custodial parent’s right to pursue another relationship is integrally connected to the health and well-being of the custodial parent. Certainly, the best interests of the children cannot be considered in a vacuum without looking at the well-being of the custodial parent.
 

 Additionally, we note that:
 

 The advantage . . . need not be a substantial advantage but one based on a sincere and genuine desire of the custodial parent to move and a sensible good faith reason for the move.
 

 Cooper v. Cooper, 491 A.2d 607, 613 (N.J. 1984). A “good faith” reason means one that is not designed to frustrate the visitation rights of the noncustodial parent. Holder v. Polanski, 544 A.2d 852, 856-57 (N.J. 1988). Accordingly, we conclude that Porter’s desire to move to Chico, California, to enhance her employment opportunities, provide better living and growing conditions for her children, and pursue her relationship with James, meets the “actual advantage” threshold requirement of
 
 Schwartz.
 

 The inquiry under
 
 Schwartz,
 
 however, does not end here. Once the custodial parent satisfies the threshold showing of an “actual advantage,” the district court must consider: (1) the extent to which the move is likely to improve the quality of life for both the children and the custodial parent; (2) whether the custodial parent’s motives are honorable, and not designed to frustrate the noncustodial parent’s visitation rights; (3) whether the custodial parent will comply with substitute visitation orders issued by the court; (4) whether the noncustodial parent’s motives are honorable in resisting the motion for permission to remove; and (5) whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent. Schwartz v. Schwartz, 107 Nev. 378, 382-83, 812 P.2d 1268, 1271 (1991).
 

 Jones argues that Porter made no showing that the quality of life of the children would be in any way enhanced by a move to Chico. In determining whether the move will improve the quality
 
 *1262
 
 of life, the court should consider subfactors, such as: whether positive family care and support will be enhanced, whether housing and living conditions will be improved, whether educational advantages will result for the children, whether the custodial parent’s employment and income will improve, whether special needs of a child will be better served, and whether, in the child’s opinion, circumstances and relationships will be improved.
 
 Id.
 
 at 383, 812 P.2d at 1271.
 

 Jones argues that family care and support would not be enhanced since Porter has no relatives in Chico, and that the boys’ housing and environment would be diminished rather than improved because currently the boys have their own room, but would have to share a bedroom in Chico at James’ house. He states that the activities available to the boys in Chico are equally available to them in Reno, and that there is no educational advantage to Chico over Reno. Jones also maintains that the boys’ opinions do not support removal: though Porter testified that the boys had told her they were excited about the move, she also admitted that they had vacillated back and forth and expressed concerns and reservations about moving away from their friends.
 
 [7]
 
 Jones further asserts that there would be no improvement in Porter’s employment, because Porter’s twenty-one cent per hour raise does not take into account California state income tax, which would reduce Porter’s income.
 

 Porter, however, testified that more rural activities, such as backpacking and horseback riding, would be available to the boys in Chico, as well as farm activities not available to them here. Additionally, though Porter’s income may not improve from a raise in salary, other career opportunities, such as consulting, will be available. Also, by living with James and not being the sole head of household anymore, her general living expenses will decrease so that she will incur an economic advantage.
 

 Certainly, the record shows that the boys’ and Porter’s quality of life will not
 
 decrease.
 
 The custodial parent should not bear the burden of showing a drastic improvement in quality of life. A more rural area for those who enjoy outdoor activities, or a different career opportunity, rather than one bringing a big pay increase, should be taken into account in evaluating quality of life. And certainly, equal levels of education and family support should not in themselves tilt the scale against a custodial parent seeking to move. Thus, we reject Jones’ contention that Porter failed to demonstrate any improvement in quality of life.
 

 
 *1263
 
 The second factor for consideration under
 
 Schwartz,
 
 the honorableness of the custodial parent’s motives, also weighs in favor of Porter. Jones admits that there was no showing that Porter’s move was in any way motivated by a desire to frustrate Jones’ visitation rights. Moreover, the record shows that Porter has consistently made efforts to strengthen Jones’ relationship with the boys.
 

 The third factor for consideration under
 
 Schwartz
 
 is likewise in Porter’s favor, as Jones admits that “there is no reason to believe that Ms. Porter would not comply with a visitation schedule ordered by the Court.” In fact, Porter has indicated that she would submit to Nevada jurisdiction over custody matters even after the move and has demonstrated several times her willingness to work out a visitation schedule that satisfies both Jones and the district court.
 

 The fourth criterion is whether the noncustodial parent’s motives are honorable in resisting the motion for permission to move. The record reveals that Jones obviously cares about his children and does not want his existing visitation schedule to be disrupted. He has, however, according to his own testimony as well as Porter’s, not taken an especially active role in parenting and not exercised all of his visitation rights. Thus, we conclude that the district court’s characterization of Jones’ visitation as “exemplary” is an overstatement.
 

 Jones asserts that the fifth factor for consideration under
 
 Schwartz,
 
 whether there will be a realistic opportunity for a visitation schedule that will adequately foster and preserve the parental bond, is not met in this case. We disagree. The move would no doubt make the maintenance of the current visitation schedule impossible; however, we conclude that reasonable, alternative visitation exists.
 

 Reasonable, alternative visitation is visitation that ‘“will provide an adequate basis for preserving and fostering a child’s relationship with the noncustodial parent if the removal is allowed.’” Schwartz v. Schwartz, 107 Nev. 378, 385 n.5, 812 P.2d 1268, 1272 n.5 (1991) (quoting Cooper v. Cooper, 491 A.2d 606, 614 (N.J. 1984)). In
 
 Schwartz,
 
 we rejected the mother’s concerns about the cost involved in seeing her children and the inadequacy of the time to be spent with the children — finding that one month per summer was adequate time to preserve the “maternal bond.”
 

 Additionally, as another court has noted:
 

 If either is to sacrifice in this respect, there is indeed less reason to demand the sacrifice to be made by the custodial parent since it is she in the end who must arrange her life in a
 
 *1264
 
 manner consistent with the day-to-day burdens of simultaneously raising a child and pursuing a career.
 

 Helentjaris v. Sudano, 476 A.2d 828, 832 (N.J. Super. Ct. App. Div. 1984);
 
 see also
 
 In Re Marriage of Zamarippa-Gesundheit, 529 N.E.2d 780, 783 (Ill. App. Ct. 1988) (stating that although the father would prefer consistent day-to-day contact with the child, this preference was insufficient to chain the mother to the State of Illinois); Auge v. Auge, 334 N.W.2d 393, 397-98 (Minn. 1983) (removal may not be disallowed solely to maintain the existing visitation patterns).
 

 In the instant case, we conclude that the alternative visitation schedule Porter conveyed to Jones in the letter explaining the move is reasonable. Moreover, Porter has indicated that she is willing to forego support payments for the four weeks that the boys are with Jones during the summer, thus relieving his financial concerns. Additionally, Porter is willing to decrease support payments by $100.00 a month to defray the travel expenses, alleviating Jones’ concern regarding the cost of gas.
 

 We take special note of the fact that Chico is only three hours away. Though the drive may be burdensome, it is certainly not impossible and is not financially prohibitive. When a contemplated move is to a location so close that expensive air travel is unnecessary, and even weekly visitation would be possible with extra effort, an order by the district court for reasonable, alternative visitation should always be possible barring exceptional circumstances.
 
 [8]
 
 The record shows that the district court in this case did not attempt to fashion a reasonable, alternative visitation schedule, but instead passively accepted Jones’ assertion that he “did not want the children to move.” We conclude that this failure to fashion an alternative visitation schedule constitutes an abuse of discretion under
 
 Schwartz.
 

 Additionally, the district court abused its discretion by speculatively concluding that given Jones’ timidity, he would not make the extra effort to continue the relationship with his children if they moved to Chico. The evidence does not support this conclusion: Jones, despite his testimony that he is intimidated by Porter, has thus far maintained a relationship with the boys.
 

 Moreover, such speculation by the district court is not encompassed within the factors enunciated in
 
 Schwartz,
 
 for reasons
 
 *1265
 
 which this case makes clear. In making Jones’ timid personality a major balancing point in its evaluation, the district court placed an unfair burden on Porter. No matter what advantages she had shown, Jones’ timid personality and the speculation that Jones would not continue a relationship with his children if they moved, could be used by the district court to deny the move based on the “children’s best interests.” This type of evaluation places an unfair burden on the custodial parent.
 

 Porter urges us to modify
 
 Schwartz
 
 to acknowledge a presumption in favor of removal. Such a standard would entail a presumption that the custodial parent has the best interests of the children in mind in deciding to move, and shift the burden to the other parent to show that the move would make reasonable visitation impossible and that it would be inimical to the best interests of the children. Such an argument is in line with decisions in other jurisdictions.
 
 See, e.g.,
 
 Holder v. Polanski, 544 A.2d 852 (N.J. 1988).
 

 What these decisions really do, however, is refine the “actual advantage” standard and focus on the availability of reasonable, alternative visitation, rather than actually setting up a “presumption” in favor of the custodial parent. In
 
 Holder,
 
 for example, the New Jersey Supreme Court stated:
 

 Short of an adverse elfect on the noncustodial parent’s visitation rights or other aspects of a child’s best interests, the custodial parent should enjoy the same freedom of movement as the noncustodial parent. . . .
 

 Id.
 
 at 856 (citations omitted). The court further stated:
 

 Once the court finds that the custodial parent wants to move for a good-faith reason [i.
 
 e.
 
 not to thwart the other’s visitation rights], it should then consider whether the move will be inimical to the best interests of the children or adversely affect the visitation rights of the noncustodial parent. Not every change in a visitation schedule will prejudice those rights, particularly if the noncustodial parent has not exercised them .... If the move will not substantially change the visitation rights, then the court should determine whether the move would be inimical to the best interests of the children.
 

 Id.
 
 at 856-57. We agree with such reasoning.
 

 Here, we retain the factors outlined in
 
 Schwartz,
 
 as we do not feel it is necessary to modify or overrule
 
 Schwartz
 
 in order to fairly allocate burdens in a removal decision. In this decision,
 
 *1266
 
 however, we note that a custodial parent seeking removal does not need to show a significant economic or other tangible benefit to meet the threshold “actual advantage” showing. If the custodial parent shows a sensible, good faith reason for the move, the district court should evaluate the other factors enumerated in
 
 Schwartz,
 
 focusing on whether reasonable, alternative visitation is possible. If reasonable, alternative visitation is possible, the burden shifts to the noncustodial parent to show that the move is not in the best interests of the children. Such a showing must consist of concrete, material reasons why the move is inimical to the children’s best interests. Arguments that the children have expressed hesitancy to leave their friends or that the children may have to share a room instead of having separate rooms are not enough to show that the move is not in their best interests.
 

 We feel that this allocation of burdens is consistent with the evaluation process enunciated in
 
 Schwartz
 
 and is the most equitable way of balancing the interests of the children and the noncustodial parent, while giving the custodial parent the right to reasonable freedom to pursue his or her life.
 

 CONCLUSION
 

 We conclude that the district court erred under the balancing test enunciated in
 
 Schwartz
 
 in denying Porter’s petition to move to Chico, California, in order to raise her children in a more rural environment, seek expanded career opportunities, and pursue a relationship. We hereby reverse the order of the district court and remand with instructions to grant Porter’s petition for removal.
 

 [1]
 

 Jones, who has been a field engineer at National Cash Register for twelve years, testified that after he pays child support and health plan costs for himself and the boys, he has just enough money to live on.
 

 [2]
 

 Porter testified that during the year following the divorce, Jones usually refused her requests to take the boys on unscheduled weekends when she needed extra help or had a conflict with work. It was not until Jones’ attorney sent him a letter in early 1992 encouraging him to take advantage of such opportunities to spend more time with the boys that Jones began to occasionally take the boys on times that were not scheduled.
 

 [3]
 

 Jones refused to meet with Porter alone: instead he requested that the two meet with a mediator. Porter agreed to mediation, but they were unable to work out an agreement.
 

 [4]
 

 NRS 125A.350 provides:
 

 If custody has been established and the custodial parent or a parent having joint custody intends to move his residence to a place outside of this state and to take the child with him, he must, as soon as possible and before the planned move, attempt to obtain the written consent of the other parent to move the child from the state. If the noncustodial parent or other parent having joint custody refuses to give that consent, the parent planning the move shall, before he leaves the state with the child, petition the court for permission to move the child. The failure of a parent to comply with the provisions of this section may be considered as a factor if a change of custody is requested by the noncustodial parent or other parent having joint custody.
 

 [5]
 

 Porter argues that because a move to Chico, California, does not neces
 
 *1260
 
 sarily preclude weekly visitation, the factors delineated in
 
 Schwartz
 
 may not be applicable to this case. We reject this argument, as realistically, a move to Chico would preclude weekly visitation. Additionally, NRS 125A.350 applies if a custodial parent “intends to move his residence to a place outside of this state and to take the child with him,” making no reference to the distance of the move. We note, however, that the statute does not preclude moves within the state, no matter how far and how disruptive of visitation. The only justification for this distinction seems to be a concern that Nevada retain jurisdiction over the children.
 

 [6]
 

 Attempting to portray Porter as a woman who unthinkingly goes from one man to the next without consideration for her children, Jones asserts: “[TJhis is Ms. Porter’s third relationship with a man between her divorce in November, 1989, and when she brought this action in June, 1993, a period of a little more than three and one-half years.” We reject this characterization of Porter. The testimony and evidence in the record shows that Porter is a mature woman who has always put her children before her personal life. Porter testified that she broke up with the two men she had dated since her divorce because they did not consider her children important, stating that she and the boys were “a package deal.” Porter’s refusal to move without court permission further demonstrates her devotion to her children.
 

 [7]
 

 The district court, despite Jones’ request, decided not to speak with the children about the move based on the fact that they had already been questioned intensively by a mediator and by both parents.
 

 [8]
 

 This is especially so given that under NRS 125A. 350 a custodial parent could move the children to a much more remote location
 
 within
 
 Nevada, making visitation nearly impossible, without the need to obtain any permission at all.