138 Nev., Advance Opinion 7

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

ANTHONY JACOB MONAHAN,
Appellant,
vs.
AMANDA KAITLYN HOGAN,
Respondent.

No. 82031-COA

**FILED**

FEB 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to relocate a minor child. Third Judicial District Court, Lyon County; Leon Aberasturi, Judge.

*Affirmed.*

The Law Firm of Laub & Laub and Joe M. Laub and Nicholus C. Palmer, Reno,
for Appellant.

Carucci & Associates and Roderic A. Carucci, Reno,
for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA, JJ.

22-06006

*OPINION*

By the Court, GIBBONS, C.J.:

This opinion considers how to interpret NRS 125C.007(1)(b)—the best interests provision of Nevada's child relocation statute.[1] Relocation of children following the dissolution of the parents' relationship is one of the most difficult issues a court must resolve. On the one hand, courts strive to preserve the nonrelocating parent's rights and relationship with the child. *See Schwartz v. Schwartz*, 107 Nev. 378, 382, 812 P.2d 1268, 1270 (1991). On the other hand, we recognize "the custodial parent's interest in freedom of movement" and "the State's interest in protecting the best interests of the child." *Id.* (quoting *Holder v. Polanski*, 544 A.2d 852, 855 (N.J. 1988)). Efforts to balance these interests gave rise to a succession of relocation statutes, beginning with NRS 125A.350. *See* 1987 Nev. Stat., ch. 601, § 1, at 1444.

As a notice statute, NRS 125A.350's main purpose was to inform the nonrelocating parent that the relocating parent would be moving with the minor child. *Trent v. Trent*, 111 Nev. 309, 315, 890 P.2d 1309, 1313 (1995) ("NRS 125A.350 is primarily a notice statute intended to prevent one parent from in effect 'stealing' the children away from the other parent by moving them away to another state and attempting to sever contact."). NRS 125C.200 replaced NRS 125A.350, limiting the applicability of the relocation scheme to custodial parents who sought relocation. *See* 1999 Nev. Stat., ch. 118, § 2, at 737-38. Thereafter, the Nevada Legislature

---

[1]Throughout this opinion, we use the terms "best interests" when referring to NRS 125C.007(1)(b) and "best interest" when referring to the NRS 125C.0035(4) custody factors to reflect the exact language chosen by the Legislature for each statute.

added NRS 125C.006, NRS 125C.0065, and NRS 125C.007. *See* 2015 Nev. Rev. Stat., ch. 445 § 16, at 2589-90, § 13, at 2588, § 14, at 2588-89. Notice statutes NRS 125C.006 and NRS 125C.0065 expanded the scope of relocation to include both custodial parents and joint custodians. And NRS 125C.007 essentially codified factors the supreme court had already required district courts to consider when determining whether to grant relocation, particularly those established in *Schwartz*. 107 Nev. at 383, 812 P.2d at 1271 (announcing the *Schwartz* factors based in part on the *D'Onofrio v. D'Onofrio*, 365 A.2d 27, 30 (N.J. 1976), standard).

NRS 125C.007 is the statute in dispute here. NRS 125C.007 comprises NRS 125C.007(1) (the threshold test), NRS 125C.007(2) (the six relocation factors), and NRS 125C.007(3) (the burden of proof). The threshold test has three subparts, all of which the relocating parent must satisfy before the district court must proceed to the relocation factors. *See* NRS 125C.007(2) ("If a relocating parent demonstrates to the court the provisions set forth in [NRS 125C.007(1)], the court must then weigh the [relocation] factors."). Under the first provision of the threshold test, the relocating parent must demonstrate "a sensible, good-faith reason for the move" and that "the move is not intended to deprive the non-relocating parent of his or her parenting time." NRS 125C.007(1)(a). The second provision requires the relocating parent to establish that "[t]he best interests of the child are served by allowing the relocating parent to relocate with the child." NRS 125C.007(1)(b). Finally, the third provision requires the relocating parent to show that "[t]he child and the relocating parent will benefit from an actual advantage as a result of the relocation." NRS 125C.007(1)(c).

As we explain below, supreme court authority informs the legislative intent behind "sensible, good faith reason" from provision one and "actual advantage" from provision three. But "best interests of the child" from provision two has evaded clear meaning. NRS 125C.007 does not define "best interests of the child"; it does not specify the burden of proof necessary to satisfy NRS 125C.007(1)(b); and it does not explain, as the parties debate here, whether courts must apply and make specific findings as to all the custody best interest factors in NRS 125C.0035(4) when making an NRS 125C.007(1)(b) determination. Supreme court authority does not define the "best interests of the child" in this context either. Therefore, district courts are left with little guidance regarding how to apply NRS 125C.007(1)(b) of the threshold relocation test.

With this appeal, we interpret what the Legislature meant by "best interests of the child" in NRS 125C.007(1)(b), including the application of the custody best interest factors, as well as the applicable burden of proof necessary to satisfy NRS 125C.007(1). We conclude that (1) NRS 125C.007(1)(b) requires a district court to make specific findings regarding whether relocation would be in the best interests of the child—which should include the custody best interest factors—and tie those findings to its conclusion; and (2) the applicable burden of proof for the threshold test is preponderance of the evidence. Here, the district court followed the correct procedures, so we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Anthony Jacob Monahan and respondent Amanda Kaitlyn Hogan had a child, M.M., in 2012. Both parties resided, separately, in Yerington. In 2015, the parties stipulated to, and the district court ordered, joint legal and physical custody. But Monahan began working outside Yerington, and Hogan's husband, a United States Navy lieutenant,

was subsequently assigned to Naval Air Station Fallon. As a result, Hogan relocated with M.M. from Yerington to Fallon and moved the court to modify custody to reflect her de facto primary custody status.[2] In March 2019, the district court issued an order granting Hogan primary physical custody, finding that such an arrangement was in M.M.'s best interest in light of the custody best interest factors. The court also noted that Hogan's husband may need to relocate for work in the future. Later, in November 2019, the district court held a hearing to determine exact parenting time. Following that hearing, the district court entered an order setting parenting time and "incorporat[ing] by reference in its entirety" its March 2019 primary custody order.

In June 2020, Hogan moved to relocate with M.M. to Virginia Beach, Virginia, because her husband had been reassigned to a naval base there and Monahan would not consent to the relocation. Monahan opposed the motion, and the district court held an evidentiary hearing in September 2020. At the hearing, Monahan argued that it was not in M.M.'s best interests to relocate under NRS 125C.007(1)(b). He based this argument on the custody best interest factors. Hogan objected to the custody factors' relevance at the outset and contended that they were inapplicable because the hearing concerned relocation rather than custody. The court permitted Monahan to use the custody factors to argue that relocation was not in

---

[2]As to that relocation, the district court found NRS 125C.007 inapplicable because Hogan's Fallon residence was 65 miles from Monahan's Yerington home, which was not "such a distance that would substantially impair the ability of the other parent to maintain a meaningful relationship with the child." *See* NRS 125C.0065(1). In the alternative, the court found that Hogan had shown Monahan implicitly consented to the relocation, thereby satisfying NRS 125C.007. That relocation is not at issue in this appeal.

M.M.'s best interests because NRS 125C.007(1)(b) uses the term "best interests of the child" and the custody factors are used in determining a child's best interest. Later, after hearing the evidence, the court stated, "I don't see the [custody] best interest factors [in NRS 125C.0035(4)(a)-(*l*)] changing the relocation analysis, having considered [(a)] through [(*l*)]."

In October 2020, the district court entered an order granting Hogan's motion to relocate. The court analyzed each provision under NRS 125C.007(1) and each relocation factor under NRS 125C.007(2) and made relevant findings. Regarding NRS 125C.007(1)(b), the district court incorporated by reference and reevaluated its best interest findings from its November 2019 order, stating,

> The [c]ourt finds it is in the minor child's best interest[s] to relocate with Mother to Virginia. The Court previously considered the best interest factors in its[ ] November 20, 2019 Order which granted Mother primary physical custody of the minor child, and the relocation does not modify any prior best interest factor findings. Mother's future move based upon her Husband's reassignment was contemplated at the time of the last custodial order.

This appeal followed.

## ANALYSIS

NRS 125C.007(1)(b) states that "[i]n every instance of a petition for permission to relocate with a child that is filed pursuant to NRS 125C.006 or [NRS] 125C.0065, the relocating parent must demonstrate to the court that . . . [t]he best interests of the child are served by allowing the relocating parent to relocate with the child." But NRS 125C.007(1)(b) does not define "best interests of the child" in this context, and it does not explain whether the district court must apply and make specific findings as to each custody best interest factor when deciding relocation.

Monahan argues the district court abused its discretion by incorporating its findings based on the custody best interest factors from its November 2019 order to satisfy NRS 125C.007(1)(b) in its October 2020 order. Because its November 2019 order had already incorporated its previous March 2019 best interest findings, Monahan contends the analysis was "stale," as the district court had made the best interest findings over a year and a half earlier.[3] Therefore, Monahan interprets "best interests of the child" within the meaning of NRS 125C.007(1)(b) as requiring the district court to analyze the custody factors anew whenever it considers a motion to relocate. Hogan responds that the district court was not required to apply the custody best interest factors to determine the child's best interests under NRS 125C.007(1)(b) because she already had primary physical custody and she moved for relocation under NRS 125C.006, which does not require a custody determination, unlike NRS 125C.0065, which

---

[3]Citing *Castle v. Simmons*, 120 Nev. 98, 104-05, 86 P.3d 1042, 1047 (2004), Monahan further contends the district court relied on facts that would have been "res judicata" as of the March 2019 order. Monahan does not specify which facts the district court improperly relied upon. Instead, Monahan essentially concludes that the district court must have violated *Castle* because it incorporated conclusions from a prior order by reference. But Monahan's argument lacks merit. First, the district court in this case reevaluated its best interest factors analysis at the hearing and in its October 2020 order. Thus, the court was not relying on "stale" information. Second, *Castle* is not so broad that a district court may never again rely on facts presented at a previous proceeding. *See Nance v. Ferraro*, 134 Nev. 152, 163, 418 P.3d 679, 688 (Ct. App. 2018) ("*Castle* do[es] not, however, bar district courts from reviewing the facts and evidence underpinning their prior rulings in deciding whether the modification of a prior custody order is in the child's best interest."); *see also Romano v. Romano*, 138 Nev., Adv. Op. 1, n.6, 501 P.3d 980, 984 n.6 (2022) (applying the *Nance* rule to the custody modification context). Thus, Monahan's argument fails because he does not show that the district court improperly referenced its findings from a previous order in its October 2020 order.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

does. Hogan also emphasizes that the district court nevertheless considered the custody factors and concluded that they did not change its relocation conclusion.

The parties' contrasting interpretations of what is required to determine the "best interests of the child" under NRS 125C.007(1)(b) raises an issue of how this phrase, in this context, must be applied. We conclude that NRS 125C.007(1)(b)'s application is unclear, and we therefore interpret what the Legislature intended by "best interests of the child" thereunder. Additionally, to give full meaning to NRS 125C.007(1)(b)'s "best interests of the child," we explain the burden of proof necessary to satisfy NRS 125C.007(1).

*The indeterminate "best interests of the child" standard*

The "best interests of the child" standard is a polestar of judicial decision making in family law matters. *See Schwartz*, 107 Nev. at 382, 812 P.2d at 1270-71. Unfortunately, although it is among the most widely used family law terms, the best interests of the child standard can be imprecise, changing meaning from one context to the next. In the physical custody context, for example, the Nevada Legislature delineated a nonexhaustive list of 12 factors that the district court must consider, among other things, to determine the child's best interest. *See* NRS 125C.0035(4). As discussed more fully below, Nevada law offers guidance on how to address the best interests of the child in other family law contexts as well. Far less clear, however, is how the best interests of the child standard applies in the relocation context.

The plain language of NRS 125C.007(1)(b) requires, and the parties do not dispute, that the district court must find the *relocation itself* is in the child's best interests. However, the parties assign different

meanings to the phrase "best interests of the child." Monahan contends that "best interests of the child" means the district court must apply the child custody best interest factors. Considering that the custody best interest factors and NRS 125C.007(1)(b) use virtually the same language, they are in close proximity within Chapter 125C, and the supreme court has linked the custody and relocation contexts, Monahan's interpretation is reasonable. *See California v. Trump*, 963 F.3d 926, 947 n.15 (9th Cir. 2020) (holding that under the doctrine of *in pari materia*, "related statutes should be construed as if they were one law" (internal quotations omitted)); *Schwartz*, 107 Nev. at 382, 812 P.2d at 1270 ("[S]ome of the same factual and policy considerations may overlap [between custody and relocation].").

Hogan counters that NRS 125C.007(1)(b) simply requires that the district court find relocation is in the best interests of the child based upon the facts of the case, without requiring the court to consider any factors in particular. This interpretation also has merit. As Hogan stresses, the Nevada Legislature chose not to incorporate the custody factors by reference, unlike other state legislatures. *See, e.g.*, Ariz. Rev. Stat. Ann. § 25-408(I)(1) (incorporating custody best interests factors by reference into its best interests of the child test for purposes of relocation); Colo. Rev. Stat. § 14-10-129(2)(c) (same when the primary custodian seeks to relocate); Fla. Stat. § 61.13001(7)(k) (same when no presumption in favor or against relocation applies); Tenn. Code Ann. § 36-6-108(c)(2)(H) (same).

Nevada law applies the best interests of the child standard in other contexts without ascribing it a specific definition or factors. *See, e.g.*, NRS 62D.010(2) (limiting public access in juvenile proceedings if "in the best interests of the child"); NRS 432B.430 (providing the same in the context of abuse and neglect cases); NRS 432B.480 (basing whether a child

COURT OF APPEALS
OF
NEVADA

(O) 1947B

9

should be placed in protective custody on "the best interests of the child"); NRS 432B.560(1) (stating that the court may issue orders for treatment and visitation in "the best interests of the child"); NRS 432B.570(2) (stating that the court shall decide motions for revocation or modification of orders in "the best interest of the child"); *Clark Cty. Dist. Att'y, Juvenile Div. v. Eighth Judicial Dist. Court*, 123 Nev. 337, 344, 167 P.3d 922, 926 (2007) (holding that the best interest of the child standard applies in the foster placement context without deciding on specific factors). However, because the supreme court has adopted best interests factors in other family law contexts,[4] it arguably would make sense to ascribe a different meaning to the term "best interests" under NRS 125C.007(1)(b)—separate and apart from what Hogan and Monahan offer—as well. As a result, "best interests of the child" under NRS 125C.007(1)(b) has at least two reasonable interpretations, probably more. *Cf. Mizrachi v. Mizrachi*, 132 Nev. 666, 674, 385 P.3d 982, 987 (Ct. App. 2016) (concluding that a divorce decree term was ambiguous because it was susceptible to more than one reasonable interpretation). The term therefore lacks clear meaning.

*Clarifying "best interests of the child" within NRS 125C.007(1)(b)*

Because NRS 125C.007(1)(b) is unclear, we interpret what the Legislature intended it to mean. *Potter v. Potter*, 121 Nev. 613, 616, 119 P.3d 1246, 1248 (2005). We first look to the legislative history to discern that intent. *Id.* The Nevada Legislature added NRS 125C.007 to the

---

[4]*See, e.g., Arcella v. Arcella*, 133 Nev. 868, 872-73, 407 P.3d 341, 346 (2017) (providing ten factors to consider when determining educational placement in the child's best interests); *Petit v. Adrianzen*, 133 Nev. 91, 94-95, 392 P.3d 630, 633 (2017) (adopting a list of factors to determine the child's best interests in the context of naming disputes).

custody and parenting time statutes in 2015. The Parental Rights Protection Act, A.B. 263, 78th Leg. Sess. (Nev. 2015).

The legislative history does not provide the meaning of "best interests of the child" in this context. *See generally* Hearing on A.B. 263 Before the Assemb. Comm. on Judiciary, 78th Leg. Sess. (Nev. 2015). However, former Assemblymember Keith Pickard (now state senator), who helped draft this legislation, did imply that NRS 125C.007 was a codification of then-existing supreme court authority.[5] *See id.* at 16 (testimony of Keith Pickard, Assemb.) ("Additions were made in an effort to clarify and unify the rulings so there are no longer multiple standards in case law."). And this implication is supported by the fact that several phrases from NRS 125C.007 are mirrored in the supreme court's relocation jurisprudence. *Compare* NRS 125C.007(1)(a), *with Jones v. Jones*, 110 Nev. 1253, 1261, 885 P.2d 563, 569 (1994) (good faith reason to relocate), *superseded by statute*, NRS 125C.007(3); *and* NRS 125C.007(1)(c), *with Schwartz*, 107 Nev. at 382, 812 P.2d at 1271 (actual advantage in relocating); *and* NRS 125C.007(2), *with Schwartz*, 107 Nev. at 383, 812 P.2d at 1271 (*Schwartz* relocation factors).

Because the legislative history provides little guidance as to "best interests of the child," we next look to supreme court authority predating NRS 125C.007 to decipher the legislative intent behind NRS 125C.007(1)(b). *See McKay v. Bd. of Supervisors of Carson City*, 102 Nev.

---

[5]Assemblymember Pickard also circulated an exhibit during the hearing on AB 263, which generally stated, "The bill does, however, deliberately keep the discretion in the trial court to make a [relocation] determination based upon the best interest of the child." Hearing on A.B. 263 Before the Assemb. Comm. on Judiciary, 78th Leg. Sess. (Nev. 2015) (Exhibit F, at 3).

644, 650-51, 730 P.2d 438, 443 (1986) ("The meaning of the words used may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it."). Unfortunately, there once again is little to no guidance regarding the language in NRS 125C.007(1)(b). Supreme court authority regarding relocation, however, appears to give context to the meaning of other statutory language in NRS 125C.007.

For example, *Gandee* and *Trent* shed light on the "sensible, good faith reason" threshold provision. *Gandee v. Gandee*, 111 Nev. 754, 757, 895 P.2d 1285, 1287 (1995) (career advancement is a sensible, good faith reason); *Trent*, 111 Nev. at 316, 890 P.2d at 1313 (moving to marry a nonresident is a good faith reason). *Trent* also aids in the understanding of the origin of the actual advantage threshold provision, as does *Jones*. *Trent*, 111 Nev. at 316, 890 P.2d at 1313 (an improved economic situation creates an actual advantage); *Jones*, 110 Nev. at 1260, 1262, 885 P.2d at 568, 570 (a more rural lifestyle, career opportunities, and a serious relationship in the new state collectively constitute an actual advantage). *McGuinness* and *Cook* identify circumstances that would satisfy some of the six relocation factors originally articulated in *Schwartz* and now largely found in NRS 125C.007(2). *McGuinness v. McGuinness*, 114 Nev. 1431, 1436, 970 P.2d 1074, 1078 (1998) (calls, emails, letters, and frequent parenting time can be reasonable alternative means of maintaining a meaningful relationship); *Cook v. Cook*, 111 Nev. 822, 828, 898 P.2d 702, 706 (1995) (a hostile relationship between the parents did not mean the relocating parent would refuse to comply with a revised parenting time order); *Schwartz*, 107 Nev. at 383, 812 P.2d at 1271 (relocation factors).

Finally, the burden of proof announced in NRS 125C.007(3) was the Legislature's attempt to undo the burden-shifting framework that the supreme court had established. In *Jones*, the court held that once the relocating parent demonstrated the threshold provisions and relocation factors, the burden shifted to the nonrelocating parent to show that the move would not be in the child's best interests. 110 Nev. at 1266, 885 P.2d at 572. NRS 125C.007(3) eliminates that practice by clarifying that "[a] parent who desires to relocate with a child pursuant to NRS 125C.006 or [NRS] 125C.0065 has the burden of proving that relocating with the child is in the best interest of the child."

In contrast, supreme court authority does not help explain the phrase "best interests of the child" found in NRS 125C.007(1)(b). Because we are again left with little guidance, we must interpret the legislative intent behind NRS 125C.007(1)(b) in favor of what is reasonable. *See Edgington v. Edgington*, 119 Nev. 577, 583, 80 P.3d 1282, 1287 (2003).

Reasonably, every custody best interest factor need not be applied anew when the relocating parent is already a primary physical custodian. *See* NRS 125C.006 (requiring a custodial parent to petition for permission to relocate, in contrast with NRS 125C.0065, which requires a joint custodian to seek primary physical custody); *see also Schwartz*, 107 Nev. at 382, 812 P.2d at 1270 ("Removal of minor children from Nevada by the custodial parent is a separate and distinct issue from the custody of the children."). NRS 125C.0065—the notice statute for joint custodians—requires that joint custodians who seek relocation also petition the court for primary custody for the purposes of relocating. As Hogan points out, NRS 125C.006—the notice statute for primary custodians—does not. This is because primary custodians have already demonstrated that they should

have primary custody. We do not interpret NRS 125C.007(1)(b) as requiring a custody best interest analysis and findings because primary custodians would essentially be forced to re-prove that they should have primary custody when they already have it. Doing so might obfuscate the distinction between NRS 125C.0065, which requires a custody best interest analysis, and NRS 125C.006, which does not. *See In re Estate of Murray*, 131 Nev. 64, 67, 344 P.3d 419, 421 (2015) ("[T]his court must give a statute's terms their plain meaning, considering its provisions as a whole so as to read them in a way that would not render words or phrases superfluous." (quoting *S. Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005))).

Moreover, the introductory language in NRS 125C.007(2)[6] demonstrates that NRS 125C.007(1)(a)-(c) are "threshold" provisions; so do remarks made by one of the principal drafters.[7] Our court has also treated these provisions in that fashion. *See, e.g.*, *Doughty v. Laquitara*, No. 81683-COA, 2021 WL 3702016, at *2 (Nev. Ct. App. Aug. 19, 2021) (Order of Affirmance); *Melinkoff v. Sanchez-Losada*, No. 71380, 2018 WL 1417836, at *2 (Nev. Ct. App. Feb. 26, 2018) (Order of Affirmance); *Corcoran v. Zamora*, No. 71111, 2017 WL 6805189, at *2 (Nev. Ct. App. Dec. 27, 2017) (Order of Affirmance).

---

[6]"If a relocating parent demonstrates to the court the provisions set forth in subsection 1, the court must *then* weigh the following factors." NRS 125C.007(2) (emphasis added).

[7]Keith Pickard, *AB 263—The Parental Rights Protection Act of 2015: Legislative History*, 28 Nev. Fam. L. Rep. 6 (2015) ("[T]he Act codified the *Schwartz* [relocation] factors that the *Druckman* [*v. Ruscitti*, 130 Nev. 468, 474, 327 P.3d 511, 515 (2014),] decision attempted to apply, including a three-prong *threshold* test." (emphasis added)).

Furthermore, as Hogan stresses, there are 12 custody best interest factors. Thus, if we were to interpret NRS 125C.007(1)(b) as requiring findings as to each of the custody best interest factors in every relocation case, a district court would have to apply three threshold provisions—one of which would include 12 possible subfactors—to determine whether the threshold relocation test has been met before proceeding to an only six-factor analysis under the relocation factors. *See Jones*, 110 Nev. at 1260, 885 P.2d at 568 (concluding that a relocating parent need not demonstrate "tangible benefit[s]" under the actual advantage threshold requirement, precursor to the threshold relocation test, because they should be considered under the *Schwartz* factors *"after the custodial parent makes a threshold showing"*). We conclude these anomalies are not what the Legislature intended when it could have required primary custodians to refile for custody in NRS 125C.006, like in NRS 125C.0065, but it chose not to do so. *See generally Steward v. Steward*, 111 Nev. 295, 302, 890 P.2d 777, 781 (1995) ("When interpreting a statute, any doubt as to legislative intent must be resolved in favor of what is reasonable, and against what is unreasonable, so as to avoid absurd results.").

Hogan, however, goes too far in suggesting the statutory custody factors are not relevant to NRS 125C.007(1)(b) at all if the relocating parent already has primary physical custody. Indeed, the district court should consider the best interest custody factors and any other factors the court deems relevant. *See* NRS 125C.0035(4) ("In determining the best interest of the child, the court shall consider and set forth its specific findings concerning, *among other things*: [list of factors]." (emphasis added)); *see also Nance*, 134 Nev. at 162 n.10, 418 P.3d at 687 n.10

(suggesting in dicta that the custody factors are relevant to NRS 125C.007(1)(b)); *Seminario v. Pierzchanowski*, No. 64670, 2015 WL 9596958, at *2 (Nev. Dec. 30, 2015) (Order of Affirmance) (concluding that the district court did not abuse its discretion by finding that relocation was in the child's best interests when the district court considered both the custody and *Schwartz* factors).

The district court must then make specific findings as to any of the factors it deems applicable. *See Pelkola v. Pelkola*, 137 Nev., Adv. Op. 24, 487 P.3d 807, 810 (2021) (concluding that the district court must make specific findings as to each of the NRS 125C.007(1) subfactors). For example, if two parents have such high conflict that the parties are better off coparenting from afar, then custody best interest factors (d) and (e)—the level of conflict between the parents and their ability to cooperate—could be applicable to determining the child's best interests under NRS 125C.007(1)(b). *See, e.g., Pasternak v. Pasternak*, 467 S.W.3d 264, 272 (Mo. 2015) (affirming the trial court's conclusion that relocation was in the best interests of the children where greater physical distance between two contentious parents would "reduce stress on the children"). If the child is bonded to both parents, custody factor (h)—the nature of the relationship between the child and each parent—could also be applicable to NRS 125C.007(1)(b). *See, e.g., Weiland v. Ruppel*, 75 P.3d 176, 179 (Idaho 2003) (affirming the district court's conclusion that relocation was not in the child's best interests when the child bonded to both parents). Or, if one parent has physical custody of the child's sibling, factor (i)—the ability of the child to maintain a relationship with any sibling—could be applicable. *See, e.g., Schmidt v. Bakke*, 691 N.W.2d 239, 244 (N.D. 2005) (concluding

that "the effect of the separation of siblings" is a consideration when assessing whether relocation is in the best interests of the child).

Other nonenumerated factors—such as the parent's greater ability to provide for the child in the new location—may also be applicable. *See* NRS 125C.0035(4) (a best interest finding includes the enumerated factors "among other things"); *cf. Gazzara v. Nance*, No. 79588, 2020 WL 2529039, at *1 (Nev. May 15, 2020) (Order of Affirmance) (affirming the district court's conclusion that relocation was in the best interests of the child where the relocating parent received a promotion in another state); *Johnston v. Dickes*, 116 N.Y.S.3d 818, 819 (App. Div. 2019) (concluding that the trial court must consider economic factors, including that the relocating parent's new location had lower housing costs, when determining whether relocation was in the best interests of the child); *In re Matter of Moredock*, 12 N.Y.S.3d 711, 712 (App. Div. 2015) (concluding that relocation was in the best interests of the child because the relocating, primary custodian "would be living in poverty without a stable home" if she did not relocate).[8]

---

[8]We also have issued orders where certain custody factors would have been applicable to determining the best interests of the child in the relocation context. *See, e.g., Doughty*, 2021 WL 3702016, at *3 (concluding that the district court properly considered that the child "would miss his dad and brother if he moved" in determining the child's best interests); *Rowberry v. Rowberry*, No. 81118-COA, 2021 WL 3701857, at *5 (Nev. Ct. App. Aug. 18, 2021) (Order of Affirmance) (concluding that the district court did not abuse its discretion where it found relocation was in the child's best interests because the relocating parent and her new husband could not afford to live separately, amongst other things); *Reed v. Reed*, No. 76540-COA, 2019 WL 851946, at *2 (Nev. Ct. App. Feb. 14, 2019) (Order of Affirmance) (affirming the district court's conclusion that relocation was in the child's best interests when the parents' high degree of conflict and inability to constructively communicate required them to limit contact); *Brokaski v. Brokaski*, No. 70865, 2017 WL 946325, at *2 (Nev. Ct. App.

Last, the court must take its specific findings as to the applicable factors and tie them to its conclusion regarding the child's best interests. *See Davis v. Ewalefo*, 131 Nev. 445, 451, 352 P.3d 1139, 1143 (2015) (holding that the district court must issue specific findings when making a best interest custody determination and tie them to its conclusion); *see also Pelkola*, 137 Nev., Adv. Op. 24, 487 P.3d at 810. Such a standard strikes the appropriate balance between the noncustodial parent's interest in maintaining a close relationship with the child and the custodial parent's interest in freedom of movement.

Here, the district court incorporated a prior best interest analysis from an order following a change of custody motion, which the court made with knowledge that Hogan may relocate in the future. The district court made a summary finding in its order that relocation was in M.M.'s best interests and that nothing about the relocation changed the best interest analysis that the court completed in the prior order. Monahan asserts that this analysis was "stale," which we addressed in footnote 2, but fails to identify which factors, if considered anew, would have weighed against relocation. Therefore, he has not demonstrated that the district court's best interests determination affected his substantial rights. *See Wyeth v. Rowatt*, 126 Nev. 446, 465, 244 P.3d 765, 778 (2010) (explaining that "[a]n error is harmless when it does not affect a party's substantial rights" and harmless error does not warrant a reversal); *cf.* NRCP 61 ("At

---

Mar. 6, 2017) (Order of Affirmance) (affirming the district court's conclusion that relocation was not in the children's best interests when there was conflict between the parents that hindered their ability to coordinate interstate parenting time and the children were "extremely close and bonded" to both parents).

every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

Further, the district court made findings regarding the actual advantages that relocating would bring M.M. and Hogan under the third provision of the threshold relocation test. For example, the court found that M.M. would have greater access to outside tutoring and educational resources, would have a better quality of life in Virginia, and would not be separated from her half-sibling if permitted to relocate with Hogan. These actual advantages to M.M. overlap with M.M.'s best interests. *See* NRS 125C.007(1)(b), (c). And failure to restate those findings under NRS 125C.007(1)(b) is not fatal to the district court's best interests determination. *See also Schwartz*, 107 Nev. at 382, 812 P.2d at 1270-71 (concluding that relocation "involves a fact-specific inquiry and cannot be reduced to a rigid 'bright-line' test"); *cf. Rowberry*, 2021 WL 3701857, at *5 (concluding that the district court did not err by failing to make findings as to the custody best interest factors where the district court made findings as to all three threshold provisions and the relocation factors in NRS 125C.007(2), and the appellant did not demonstrate how his substantial rights were affected by the alleged error). Therefore, we conclude that the district court did not abuse its discretion by granting Hogan's relocation petition.

*The burden of proof necessary to satisfy NRS 125C.007(1)*

The applicable burden of proof necessary to satisfy the "best interests of the child" standard under NRS 125C.007(1)(b) was not directly

argued by the parties,[9] but it has never been addressed by our supreme court and is integrally related to interpreting the threshold provision the parties put before us. Therefore, we choose to address it. *Cf. Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 437, 245 P.3d 542, 544-45 (2010) (indicating that "refinements of points" raised below are not waived on appeal). While NRS 125C.007(1)(b) is a threshold provision and possibly should, therefore, require a less rigorous analysis than the six relocation factors, preponderance of the evidence is still the default evidentiary standard in family law absent "clear legislative intent to the contrary." *Mack v. Ashlock*, 112 Nev. 1062, 1066, 921 P.2d 1258, 1261 (1996); *but cf. Rooney v. Rooney*, 109 Nev. 540, 542-43, 853 P.2d 123, 124-25 (1993) (establishing a lesser burden of proof of adequate cause for requiring a hearing on a motion to modify custody); *see also Arcella*, 133 Nev. at 871, 407 P.3d at 345 (applying the *Rooney* standard in a motion to modify case). Clear legislative intent means the statute itself prescribes a different evidentiary standard than preponderance of the evidence. *See Mack*, 112 Nev. at 1066, 921 P.2d at 1261 (offering NRS 128.090(2), which expressly requires clear and convincing evidence, as an example of "clear legislative intent to the contrary").

Here, NRS 125C.007 is incomplete in establishing evidentiary standards, and no legislative history discusses evidentiary burdens for any of the NRS 125C.007 provisions. Therefore, we cannot say that the Legislature clearly intended a lower evidentiary burden for NRS 125C.007(1)(b). *Compare* NRS 125C.0035(5) (requiring findings by clear

---

[9]On relevance grounds, Hogan did object below that a best interests finding under NRS 125C.007(1)(b) did not require an application of the custody best interest factors because she already had primary custody.

and convincing evidence to activate the presumption that sole or joint physical custody by a domestic abuser is not in the best interest of the child), *with* NRS 125C.007(1) (omitting any discussion of evidentiary burdens), *and* NRS 125C.007(3) (placing the burden of proving best interest on the party seeking to relocate but not establishing the quantum of proof required).

Thus, we conclude that the relocating parent has the burden of proving all three threshold provisions are met. *See* NRS 125C.007(1) (stating that "the relocating parent must demonstrate to the court" the three threshold provisions). We further conclude that the applicable burden of proof necessary to satisfy the threshold provisions under NRS 125C.007(1) is preponderance of the evidence.

### CONCLUSION

"Best interests of the child" from NRS 125C.007(1)(b) does not have a clear meaning. We conclude that NRS 125C.007(1)(b) requires the district court to make specific findings that relocation would be in the best interests of the child and tie those findings to its conclusion. Our interpretation of best interests strikes the appropriate balance between preserving the noncustodial parent's relationship with the child and not unduly restricting the custodial parent from pursuing life outside Nevada. The district court has discretion in determining how to decide the child's best interests, but it still must make findings as to all three threshold provisions, plus the six relocation factors if the relocating parent demonstrates the threshold provisions, under a preponderance of the

evidence standard.  The district court's order met those requirements and thus we affirm.

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Bulla